# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re FEDERATED MUTUAL FUNDS**<br>**EXCESSIVE FEE LITIGATION** | )<br>)<br>)<br>)<br>) | **Civil Action No. 04-352 (DSC)**<br><br>Document Filed Electronically |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE FEDERATED DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**REED SMITH LLP**
Thomas L. Allen, PA 33243
Perry A. Napolitano, PA 56789
Joseph E. Culleiton, PA 82823
Casey C. Dick, PA 93818
James L. Rockney, PA 200026
435 Sixth Avenue
Pittsburgh, PA 15219
Telephone:  (412) 288-3131
Facsimile: (412) 288-3063
tallen@reedsmith.com
pnapolitano@reedsmith.com
jculleiton@reedsmith.com
cdick@reedsmith.com
jrockney@reedsmith.com

*Attorneys for Defendants Federated Investors,*
*Inc., Federated Investment Management*
*Company, Federated Global Investment*
*Management Corp., Federated Equity*
*Management Company of Pennsylvania,*
*Federated Securities Corp., and Federated*
*Shareholder Services Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT REGARDING PLAINTIFFS' ALLEGATIONS .....................................2

    A.    The Parties. ...................................................................................2

    B.    Plaintiffs' Allegations. ....................................................................3

APPLICABLE LEGAL STANDARDS ........................................................................4

ARGUMENT .........................................................................................................5

I.     PLAINTIFFS' CLAIMS CANNOT BE PLED AS DIRECT CLAIMS, BUT ONLY CAN BE BROUGHT DERIVATIVELY ON BEHALF OF THE FUNDS...........5

II.    PLAINTIFFS LACK STANDING TO ASSERT ANY CLAIMS ON BEHALF OF FUNDS IN WHICH THEY DID NOT INVEST .........................................7

    A.    Plaintiffs Cannot Satisfy the Constitutional Requirements of Standing .................8

    B.    Standing Is a Threshold Issue that Must Be Determined Prior to the Consideration of Class Certification ......................................................10

    C.    The Juridical Link Doctrine Does Not Provide an Exception from the Constitutional Standing Requirement .....................................................12

    D.    Plaintiffs also Have Not Met the Statutory Requirements of Standing Under Section 36(b) of the ICA ..........................................................14

III.   PLAINTIFFS' CLAIMS UNDER SECTIONS 36(a) AND 48(a) OF THE ICA MUST BE DISMISSED BECAUSE NO IMPLIED PRIVATE RIGHT OF ACTION EXISTS UNDER ANY SECTION OF THE ICA ...........................................16

IV.   PLAINTIFFS' CLAIMS UNDER SECTION 36(b) FAIL TO PLEAD ANY FACTS REGARDING THE CHALLENGED FEES PAID BY THE OTHER FUNDS ...................................................................................................20

V.    PLAINTIFFS' SECTION 48(a) CLAIMS FAIL BECAUSE PLAINTIFFS FAIL TO PLEAD AN UNDERLYING PREDICATE VIOLATION .........................................23

VI.   PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE THEY ARE PREEMPTED BY SLUSA ...............................................................................23

CONCLUSION.....................................................................................................31

## TABLE OF AUTHORITIES

### CASES

**Page**

Alexander v. Sandoval,
532 U.S. 275 (2001)..................................................................................17, 19, 20

Allen v. Wright,
468 U.S. 737 (1984)..............................................................................................8

In re AllianceBernstein Mut. Fund Excessive Fee Litig.,
No. 04 Civ. 4885(SWK), 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005).....8, 10, 11, 12, 14

In re AllianceBernstein Mut. Fund Excessive Fee Litig.,
No. 04 Civ. 4885(SWK), 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ..........................8, 22

In re Am. Mut. Funds Fee Litig.,
Case No. CV 04-5593-GAF (RNBx), slip op. (C.D. Cal. Dec. 16, 2005)................ passim

Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings Inc.,
825 F.2d 731 (3d Cir. 1987)..............................................................................18, 19, 20

In re Bank of Boston Corp. Sec. Litig.,
762 F. Supp. 1525 (D. Mass. 1991) .................................................................11

Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 v. Wettlin Assocs., Inc.,
237 F.3d 270 (3d Cir. 2001)...............................................................................4

Boland v. Engle,
113 F.3d 706 (7th Cir. 1997) ...........................................................................19

Brown v. Bullock,
194 F. Supp. 207 (S.D.N.Y. 1961), aff'd, 294 F.2d 415 (2d Cir. 1961)............................18

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
511 U.S. 164 (1994)..........................................................................................17, 18, 19

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
No 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005).............................................20

Chamberlain v. Aberdeen Asset Mgmt. Ltd.,
No 02 CV 5870, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005).........................................17

Chevalier v. Baird Sav. Ass'n,
66 F.R.D. 105 (E.D. Pa. 1975)............................................................................12

Cooter & Gell v. Hartmax Corp.,
496 U.S. 384 (1990)..........................................................................................11, 12

Daily Income Fund, Inc. v. Fox,
464 U.S. 523 (1984)...........................................................................................6

In re Davis Selected Mut. Funds Litig.,
No. 04 Civ. 4186(MGC), 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005)..........................17

## TABLE OF AUTHORITIES

### CASES

**Page**

Disher v. Citigroup Global Mkts., Inc.,
419 F.3d 649 (7th Cir. 2005) ...................................................................................29

In re Dreyfus Mut. Funds Fee Litig.,
Master File No. 04-0128,
2005 U.S. Dist. LEXIS 29152 (W.D. Pa. Sept. 30, 2005) ........................17, 19, 20, 27, 29

Dull v. Arch,
No. 05 C 140, 2005 WL 1799270 (N.D. Ill. July 27, 2005) .............................................17

Easter v. Am. W. Fin.,
381 F.3d 948 (9th Cir. 2004) ...................................................................................13

In re Eaton Vance Corp. Sec. Litig.,
219 F.R.D. 38 (D. Mass. 2003).................................................................................11

In re Eaton Vance Corp. Sec. Litig.,
220 F.R.D. 162 (D. Mass. 2004)........................................................................ passim

In re Eaton Vance Mut. Funds Fee Litig.,
380 F. Supp. 2d 222 (S.D.N.Y. 2005)....................................................................17, 29

In re Eaton Vance Mut. Funds Fee Litig.,
403 F. Supp. 2d 310, 320 (S.D.N.Y. 2005).................................................................17

Exxon Mobil Corp. v. Allapattah Servs., Inc.,
125 S.Ct. 2611 (2005)..........................................................................................17

Fogel v. Chestnutt,
668 F.2d 100 (2d Cir. 1981)....................................................................................18

Forsythe v. Sun Life Fin., Inc.,
___, F. Supp. 2d. ___,
Civil Action No. 04-10584-GAO,
2006 U.S. Dist. LEXIS 1948 (D. Mass. Jan. 19, 2006) .............................10, 12, 13, 14, 16

In re Franklin Mut. Funds Fee Litig.,
388 F. Supp. 2d 451 (D.N.J. 2005) ...................................................................... passim

Gagliardi v. Krantzenberg,
404 F. Supp. 2d 858 (W.D. Pa. 2005).....................................................................4, 5, 8

Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,
694 F.2d 923 (2d Cir. 1982)....................................................................................21

Gibson v. PS Group Holdings, Inc.,
No. 00-CV-0372 W(RBB), 2000 WL 777818 (S.D. Cal. Mar. 8, 2000)...........................25

In re Goldman Sachs Mut. Funds Fee Litig.,
No. 04 Civ. 2567(NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006).................16, 21, 23

## TABLE OF AUTHORITIES

### CASES

**Page**

Gollust v. Mendell,
501 U.S. 115 (1991)........................................................................................8, 9

Haas v. Pittsburgh Nat'l Bank,
526 F.2d 1083 (3d Cir. 1975)...............................................................10

Hamilton v. Allen,
396 F. Supp. 2d 545 (E.D. Pa. 2005) ...............................................17, 21

Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
189 F. Supp. 2d 14 (S.D.N.Y. 2001)...................................................25

Hassine v. Jeffes,
846 F.2d 169 (3d Cir. 1988)................................................................11

Henry v. Circus Circus Casinos, Inc.,
223 F.R.D. 541 (D. Nev. 2004)...........................................................13

Jacobs v. Bremner,
378 F. Supp. 2d 861 (N.D. Ill. 2005) ..................................................17

Kauffman v. Dreyfus Fund, Inc.,
434 F.2d 727 (3d Cir. 1970)...............................................................6, 7

Kircher v. Putnam Funds Trust,
403 F.3d 478 (7th Cir. 2005) ..............................................................25, 29

Korsinksy v. Salomon Smith Barney Inc.,
No. 01 Civ. 6085(SWK), 2002 WL 27775 (S.D.N.Y. Jan. 10, 2002) .........................24, 25

Kost v. Kozakiewicz,
1 F.3d 176 (3d Cir. 1993) ...................................................................4

Krantz v. Prudential Inv. Fund Mgmt. LLC,
305 F.3d 140 (3d Cir. 2002)................................................................21

La Mar v. H & B Novelty & Loan Co.,
489 F.2d 462 (9th Cir. 1973) ..............................................................12, 13, 14

Lander v. Hardford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir. 2001)................................................................24

Lewis v. Casey,
518 U.S. 343 (1996)............................................................................8

In re Lord Abbett Mut. Funds Fee Litig.,
No. 04-CV-0559 (WJM), 2005 WL 3544312 (D.N.J. Dec. 28, 2005) .....................passim

In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.,
105 F. Supp. 2d 1037 (D. Minn. 2000)................................................26

## TABLE OF AUTHORITIES

### CASES

**Page**

meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.,
260 F. Supp. 2d 616 (S.D.N.Y. 2003)...............................................................20

Migdal v. Rowe Price-Fleming Int'l, Inc.,
248 F.3d 321 (4th Cir. 2001) ..................................................................21, 22

Moore v. Comfed Sav. Bank,
908 F.2d 834 (11th Cir. 1990) .....................................................................13

Morse v. Lower Merion Sch. Dist.,
132 F.3d 902 (3d Cir. 1997).........................................................................4

In re Mut. Funds Inv. Litig.,
(EXCELSIOR, Federated, Scudder and AMCAP [Federated Sub Tracks]),
Nos. MDL 1586, 04-MD-15861, 04-928, 04-933
2005 WL 3038695 (D. Md. Nov. 3, 2005) ....................................................17

In re Mut. Funds Inv. Litig. (In re Janus SUBTRACK),
384 F. Supp. 2d 845 (D. Md. 2005).............................................................17

Olmsted v. Pruco Life Ins. Co. of N.J.,
283 F.3d 429 (2d Cir. 2002).......................................................16, 18, 19, 20

Ortiz v. Fibreboard Corp.,
527 U.S. 815 (1999).....................................................................................12

Prof'l Mgmt. Associate, Inc. Employees' Profit Sharing Plan v. KPMG LLP,
335 F.3d 800 (8th Cir. 2003), cert. denied, 540 U.S. 1162 (2004) ...................25

Raines v. Byrd,
521 U.S. 811 (1997)......................................................................................8

Ray v. Citigroup Global Markets, Inc.,
No. 03 C 3157, 2003 WL 22757761 (N.D. Ill. Nov. 20, 2003)........................25

Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
292 F.3d 1334 (11th Cir.), cert. denied, 537 U.S. 950 (2002)..........................25

Rivera v. Wyeth-Ayerst Labs.,
283 F.3d 315 (5th Cir. 2002) .......................................................................11

Rowinski v. Salomon Smith Barney, Inc.,
398 F.3d 294 (3d Cir. 2005).........................................................................24

Steel Company v. Citizens for a Better Environment,
523 U.S. 83 (1998)........................................................................................11

Stegall v. Ladner,
394 F. Supp. 2d 358 (D. Mass 2005) ..........................................................9, 17

Transamerica Mortgage Advisers, Inc. v. Lewis,
444 U.S. 11 (1979).....................................................................................17, 18

# TABLE OF AUTHORITIES

## CASES

Page

Warth v. Seldin,
422 U.S. 490 (1975)................................................................................................9

Weiner v. Bank of King of Prussia,
358 F. Supp. 684 (E.D. Pa. 1973) ........................................................................11

## RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6)...........................................................................................4

Fed. R. Civ. P. 23.........................................................................................9, 11, 12

Fed. R. Civ. P. 23.1...................................................................................................1

15 U.S.C. § 77p(b).............................................................................................24, 27

15 U.S.C. § 77p(f)(3).............................................................................................26

15 U.S.C. §77r(b)...................................................................................................26

15 U.S.C. § 78bb(f)(1)......................................................................................24, 27

15 U.S.C. § 78bb(f)(5)(B)(i)(I)..............................................................................26

15 U.S.C. § 78u-4, et seq. ......................................................................................24

15 U.S.C. § 80a-35(a) ......................................................................................16, 18

15 U.S.C. § 80a-35(b)................................................................14, 16, 20, 21, 22

15 U.S.C. § 80a-47......................................................................................16, 23

## OTHER

5 Charles Alan Wright & Arthur R. Miller,
Federal Practice & Procedure § 1216 (3d ed. 2004)............................................4

## PRELIMINARY STATEMENT

Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint") purports to bring this case as a putative class action alleging claims under the Investment Company Act of 1940 ("ICA") and state law with respect to 135 mutual funds that are managed and advised by certain Defendants.  As evidenced by a recent tide of decisions in similar cases, many brought by Plaintiffs' counsel here, Plaintiffs' claims fail as a matter of law for multiple reasons.

First, <u>all</u> of Plaintiffs' claims fail as a matter of law because they were improperly pled as direct actions, not derivative actions.  Actions based on allegedly excessive or otherwise improper fees charged to mutual funds are derivative in nature and cannot be brought as direct or class actions under Section 36(a), Section 48(a) or common law.  Additionally, while Section 36(b) claims are not subject to Federal Rule of Civil Procedure 23.1, they still must be brought derivatively and cannot be pled as a class action.  For this reason alone, the entire Complaint is due to be dismissed.

Second, under basic constitutional standing principles, Plaintiffs cannot bring any claims with respect to Federated mutual funds in which they do not own shares.  Because Plaintiffs allege ownership of only nine Federated mutual funds, the constitutional standing requirement dictates that the Court dismiss all claims asserted by Plaintiffs with respect to the other Federated mutual funds identified in the Complaint.

Third, Plaintiffs' Section 36(a) and 48(a) claims must be dismissed because there is no implied private right of action under these sections of the ICA, as confirmed by more than a dozen recent decisions, the majority of which involve Plaintiffs' counsel.

Fourth, assuming that Plaintiffs properly brought their Section 36(b) claim strictly as a derivative action (and they did not), the claims alleged as to the funds in which Plaintiffs

hold no ownership interest must fail for lack of sufficient pleading.  To survive a motion to dismiss, Plaintiffs must plead sufficient facts to show that the challenged fees paid by the funds were so disproportionately large that they bear no reasonable relationship to the services rendered.  Plaintiffs' Complaint fails to plead <u>any</u> <u>facts</u> relating to the funds in which Plaintiffs hold no ownership interest.

Fifth, Plaintiffs' Section 48(a) claim fails because Plaintiffs fail to plead any requisite, predicate violation of the ICA.  Finally, Plaintiffs' state law claims fail because SLUSA preempts such state law claims.

For the above reasons, Plaintiffs' Complaint should be dismissed in its entirety.

## STATEMENT REGARDING PLAINTIFFS' ALLEGATIONS

### A.    The Parties

Plaintiffs, alleged current or former shareholders of certain Federated mutual funds, assert claims concerning 135 different mutual funds (the "Federated Funds").  Complaint ¶ 1, Exhibit A.  Plaintiffs, however, allege current ownership of only nine of these Federated Funds.[1]

Defendant Federated Investors, Inc. ("Federated") is the parent company that wholly owns the various "Federated Defendants" whose conduct is challenged in the instant action.  Complaint ¶¶ 20-26.  Defendants Federated Investment Management Company, Federated Equity Management Company of Pennsylvania and Federated Global Investment

---

[1]      Plaintiffs claim to currently hold shares in only the following funds:  Federated Kaufmann Fund, Federated Equity Income Fund, Federated Bond Fund, Federated Stock & Bond Fund, Federated American Leaders Fund, Federated Pennsylvania Municipal Income Fund, Federated High Income Bond Fund, Federated Kaufmann Equity Funds A and Federated Fund for U.S. Government Securities.  Complaint ¶¶ 11-19.  At least one Plaintiff claims to have held shares in the Federated Capital Appreciation Fund, although no Plaintiff claims to be a current holder of these shares.  Complaint ¶¶ 11, 13, 16.

Management Corp. ("Investment Adviser Defendants") are investment advisers to certain of the Federated Funds.  Complaint ¶¶ 21-24.  Defendant Federated Securities Corp. ("Distributor Defendant") is the principal underwriter of the Federated Funds.  Complaint ¶ 25.  Defendant Federated Shareholder Services Company ("Transfer Agent Defendant") provided transfer agent services to the Federated Funds until June 30, 2004.  The Transfer Agent Defendant also provides certain shareholder services for the Federated Funds.  Complaint ¶ 26.  (Investment Adviser Defendants, Distributor Defendant and Transfer Agent Defendant are collectively referred to as "Federated Defendants").[2]  "Federated Funds," listed at Complaint, Exhibit A, and named as nominal defendants herein, are mutual funds that operate pursuant to the federal securities laws, including the ICA.  Complaint ¶¶ 41-42.

**B.    Plaintiffs' Allegations**

The crux of Plaintiffs' allegations is that the Federated Funds allegedly paid "excessive fees and wasteful compensation" at the hands of Defendants.  Complaint ¶ 1.  Based on these allegations, Plaintiffs assert the following six claims:

COUNT I          Investment Adviser Defendants, Distributor Defendants and Trustee Defendants allegedly violated Section 36(a) of the ICA by charging excessive advisory, 12b-1 and other fees, and by drawing on the assets of the Federated Funds to pay excessive commissions;

COUNT II         Federated Defendants allegedly violated Section 36(b) of the ICA by breaching their fiduciary duties with respect to their compensation;

COUNT III        Federated, as the alleged control person of the Federated Defendants, allegedly violated Section 48(a) of the ICA by directly

---

2       Additionally, Plaintiffs sue twelve current or former trustees of the Federated Funds ("Trustee Defendants").  Complaint ¶¶ 27-40.  Plaintiffs' claims against Trustee Defendants are specifically addressed in separate briefing filed on behalf of Trustee Defendants.  See Memorandum of Law in Support of the Federated Mutual Funds' and Trustees' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint.

and indirectly causing Federated Defendants to engage in
violations of the ICA;

COUNTS IV-V    Investment Adviser Defendants, Distributor Defendants and
               Trustee Defendants allegedly breached their common law fiduciary
               duties; and

COUNT VI       Investment Adviser Defendants, Distributor Defendants and
               Trustee Defendants allegedly were unjustly enriched as a result of
               their unlawful acts.

Plaintiffs seek to bring claims on behalf of themselves and "all persons or entities

who held one or more shares, units or like interests of Federated mutual funds … during the

period March 8, 1999 to the present" (the "Class"); a purported subclass consisting of "the

security holders of the Federated mutual funds on behalf of the Federated mutual funds in which

they are security holders" (the "Section 36(b) Subclass"); and "all persons or entities who

acquired before March 8, 1999 and held during the Class Period one or more Funds" (the "State

Law Subclass").  Complaint ¶ 153.

## APPLICABLE LEGAL STANDARDS

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenge the

legal sufficiency of the complaint.  See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

"The question, then, is whether 'the facts alleged in the complaint, even if true, fail to support the

. . . claim.'"  Id. (citation omitted).  The court must accept as true all factual allegations of the

complaint and draw all reasonable inferences in the light most favorable to the plaintiff.  See Bd.

of Trs. of Bricklayers & Allied Craftsmen Local 6 v. Wettlin Assocs., Inc., 237 F.3d 270, 272

(3d Cir. 2001).  However, a court need not credit any bald assertions or legal conclusions.  See

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Rule 8 of the Federal

Rules of Civil Procedure requires that a pleading state "facts . . . rather than legal conclusions

unsupported by facts."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure

§ 1216 (3d ed. 2004) (emphasis added); see Gagliardi v. Krantzenberg, 404 F. Supp. 2d 858,

860-61 (W.D. Pa. 2005) (Cercone, J.) ("In ruling on a 12(b)(6) motion courts consistently have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS CANNOT BE PLED AS DIRECT CLAIMS, BUT ONLY CAN BE BROUGHT DERIVATIVELY ON BEHALF OF THE FUNDS

For the reasons provided in the Memorandum of Law in Support of the Federated Mutual Funds' and Trustees' Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint, Plaintiffs' Sections 36(a) and 48(a) claims and state law claims for alleged breach of fiduciary duty and unjust enrichment fail because Plaintiffs failed to bring those claims derivatively pursuant to a pre-suit demand on the Federated Funds' boards.  The Federated Defendants hereby adopt and incorporate the arguments made in the Memorandum of Law in Support of the Federated Mutual Funds' and Trustees' Motion to Dismiss.

Furthermore, Plaintiffs improperly attempt to bring their remaining Section 36(b) claim as a class action.  Although Plaintiffs purport to bring their direct class action "on behalf of the Federated mutual funds in which [the purported class members] are security holders" (Complaint ¶ 153), this characterization does not alter the fact that Plaintiffs seek to bring their Section 36(b) claim as a class action, which is impermissible under the ICA.

Recent cases, including two decisions by district courts in the Third Circuit, have dismissed complaints nearly identical to that here, holding, <u>inter alia</u>, that Section 36(b) claims may not be brought as direct class claims.  For example, the United States District Court for the District of New Jersey recently dismissed a Section 36(b) claim because it was brought improperly as a direct class action rather than as a derivative action.  <u>See In re Franklin Mut.</u>

<u>Funds Fee Litig.</u>, 388 F. Supp. 2d 451, 468 (D.N.J. 2005).  The same counsel representing

Plaintiffs in the present case also represented the <u>In re Franklin</u> plaintiffs, who brought virtually

identical claims as those alleged here, including class action claims pursuant to Section 36(b) of

the ICA, arising from allegedly improper and undisclosed payments to brokers to sell fund

shares.  <u>Id.</u> at 457-59.  Similar to the Plaintiffs here, the <u>In re Franklin</u> plaintiffs asserted all

claims, except their IAA Section 215 claim, on behalf of a class of investors in over 100 funds,

even though they only held shares in three of those funds.  <u>Id.</u> at 456.

 Importantly, the court dismissed the Section 36(b) claim in its entirety concluding

that shareholders did not have a primary or direct right of action under § 36(b).  <u>Id.</u> at 467.  In

deciding that the claim was derivative in nature, and that the claim therefore could not be

asserted as a direct class action, the court began its analysis by quoting the language from

Section 36(b) that granted a fund's security holder the right to bring an action "on behalf of" the

fund.  <u>Id.</u> at 468.  The court noted that in <u>Daily Income Fund, Inc. v. Fox</u>, 464 U.S. 523 (1984),

the Supreme Court "stat[ed] unequivocally that § 36(b) confers only a derivative right."  <u>In re</u>

<u>Franklin</u>, 388 F. Supp. 2d at 468 (quoting <u>Daily Income Fund</u>, 464 U.S. at 535 n.11).

 The court further explained:

> To the extent that [<u>Daily Income Fund</u>] distinguished a derivative claim
> under § 36(b) from a typical derivative claim, the Court did so to explain
> why Fed. R. Civ. P. 23.1 is inapplicable to § 36(b) actions . . . . Although
> shareholders do have a right to sue under § 36(b), and funds do not, that
> does not constrain or shed light on the nature of the claims that a
> shareholder may bring under § 36(b).  As stated in [<u>Daily Income Fund</u>], a
> § 36(b) action is undeniably derivative.

<u>In re Franklin</u>, 388 F. Supp. 2d at 468.  Thus, the court dismissed the Section 36(b) claim

because "shareholders do not have a primary or direct right of action under § 36(b)."  <u>Id.</u> at 467.

The court cited Third Circuit authority and reiterated that Plaintiff "may not maintain a 'class

derivative action.'"  <u>Id.</u> at n.13 (citing <u>Kauffman v. Dreyfus Funds, Inc.</u>, 434 F.2d 727, 736 (3d.

Cir. 1970) (rejecting plaintiffs' attempt to bring a class derivative action on behalf of 61 mutual funds in which he owned no shares)); see also In re Lord Abbett Mut. Funds Fee Litig., No. 04-CV-0559 (WJM), 2005 WL 3544312, at *15 (D.N.J. Dec. 28, 2005) (dismissing Section 36(b) claim because "Plaintiffs may not maintain [it] as a class action claim, given the derivative nature of the claim") (attached hereto as Exhibit 1); In re Am. Mut. Funds Fee Litig., Case No. CV 04-5593-GAF (RNBx), slip op. at 4 (C.D. Cal. Dec. 16, 2005) (dismissing claim under Section 36(b) for Plaintiffs' failure to plead it as a derivative claim) (hereinafter "In re American") (attached hereto as Exhibit 2).

For the same reasons, Plaintiffs' Section 36(b) claim here – asserted as a direct class action pursuant to Federal Rule of Civil Procedure 23 – should be dismissed because it may be brought only derivatively on behalf of the funds.[3]

## II.     PLAINTIFFS LACK STANDING TO ASSERT ANY CLAIMS ON BEHALF OF FUNDS IN WHICH THEY DID NOT INVEST

Plaintiffs purport to assert class claims on behalf of a putative class of shareholders who have invested in 135 mutual funds which are individually advised and managed by Federated Defendants.  See Complaint ¶ 1.  However, according to the Complaint, Plaintiffs purport to own shares in only nine (9) of the Federated Funds.  Recent decisions confirm that Plaintiffs do not have standing to assert claims in connection with funds in which they are not invested (the "Other Funds") and that Plaintiffs cannot sidestep threshold requirements of standing through artful pleading or the procedural mechanism of a class action. Consequently, Plaintiffs' claims against the Other Funds, based on the ICA and state law, must be dismissed for lack of standing.

---

[3]     If the Section 36(b) claim is dismissed, and Plaintiffs thereafter attempt to reassert the claim, the claim must be limited to a derivative claim on behalf of only the funds in which Plaintiffs purport to own shares.  In re Franklin, 388 F. Supp. 2d at 468 n.13.

### A.      Plaintiffs Cannot Satisfy the Constitutional Requirements of Standing

This Court must evaluate the named Plaintiffs' standing to sue on behalf of the Other Funds as a threshold matter because the resolution of the standing question bears on the constitutional power of this Court to decide the controversy.  The threshold concept of standing is grounded in Article III, Section 2 of the Constitution.  To have standing, Article III requires that plaintiff (1) have a personal injury which is (2) fairly traceable to the defendant's allegedly unlawful conduct and (3) likely to be addressed by the requested relief.  Allen v. Wright, 468 U.S. 737, 751 (1984); accord Raines v. Byrd, 521 U.S. 811, 818-19 (1997).  Styling a suit as a class action "adds nothing to the question of standing."  Lewis v. Casey, 518 U.S. 343, 357 (1996) (citations omitted) ("[N]amed plaintiffs . . . must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (citation and quotation marks omitted).

These constitutional requirements ensure that a plaintiff has suffered an injury and has an interest in the outcome of the litigation.  See In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04 Civ. 4885(SWK), 2005 WL 2677753, at *10 (S.D.N.Y. Oct. 19, 2005) (because "the named Plaintiffs have not purchased shares in the . . . Funds at issue, they cannot establish injuries caused by the advisers of those Funds.") (attached hereto as Exhibit 3), reconsideration granted on other grounds, No. 04 Civ. 4885 (SWK), 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) (dismissing remaining claims under Section 36(b) of the ICA) (attached hereto as Exhibit 4); see also Gagliardi, 404 F. Supp. 2d at 864-66, 869 (Cercone, J.) (dismissing plaintiff's RICO claims for lack of standing where alleged injurious conduct would have only affected those who actually owned the property and plaintiff did not have deed ownership of the property at any time during the events in question); Gollust v. Mendell, 501 U.S. 115, 125-26 (1991) ("Art. III's requirement remains:  the plaintiff still must allege a distinct and palpable

injury to himself [and] the plaintiff must maintain a personal stake in the outcome of the litigation throughout its course.") (quotation marks and citations omitted); cf. Stegall v. Ladner, 394 F. Supp. 2d 358, 362 (D. Mass. 2005) ("The prudential aspects of standing include 'the general prohibition on a litigant's raising another person's legal rights[.]'").  Further, a plaintiff's standing must be assessed with reference to each claim he or she asserts.  See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties.") (citations omitted) (emphasis added).

Here, Plaintiffs allege no current ownership interest in the Other Funds, i.e., in 126 of the 135 Federated Funds named as nominal defendants in this case.4  As has been repeatedly held in such cases, including many cases brought by Plaintiffs' counsel here, Plaintiffs therefore do not and cannot allege an injury to confer standing as to the Other Funds, and all claims regarding such Other Funds must be dismissed.  See Stegall, 394 F. Supp. 2d at 362-63 (refusing to permit a plaintiff to bring claims on behalf of funds that he did not actually own for lack of Article III standing and stating that "one clearly may not use the corporate structure of the broader investment company to confer standing across all funds within that company") (emphasis added); In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 164, 169 (D. Mass. 2004) ("[W]ithout Article III standing in their own right, the named plaintiffs [can]not represent other investors who may have purchased shares in [the two] funds[,]" and plaintiffs "may not use the procedural device of a class action to bootstrap [themselves] into standing[.]") (quotation marks and citations omitted) (hereinafter "In re Eaton Vance II"); see also In re

---

4       Although Plaintiffs explicitly reference the Federated Capital Appreciation Fund in their Amended Complaint, no Plaintiff appears to hold a current interest in that fund.  Compare Complaint ¶ 11, 13, 16 (stating that Plaintiffs "held during the Class Period shares or units of the Federated Capital Appreciation Fund), with Complaint ¶ 12 (stating that "Plaintiff … held during the Class Period, and continues to hold, shares or units of Federated American Leaders Fund) (emphasis added).

American, Case No. CV 04-5593-GAF (RNBx), slip op., at 2 (stating that "[t]raditional standing

analysis dictates" that "even if Plaintiffs could pursue their claims [for alleged violations of the

ICA] as direct claims, Plaintiffs have suffered no injury in fact through the ten funds in which

they do not own shares" and accordingly, the "ten nominal defendants should be dismissed").[5]

### B.   Standing Is a Threshold Issue that Must Be Determined Prior to the Consideration of Class Certification

In similar cases, where shareholders in certain funds have sought to bring claims

concerning an entire mutual fund complex, Plaintiffs' counsel here has argued that constitutional

standing should be decided after a ruling on class certification.  Such an argument must fail, as

other courts have recognized in similar mutual fund cases.  See In re AllianceBernstein, 2005

WL 2677753, at *9 (refusing to address class certification issues before determining

---

[5]      Defendants recognize that certain cases have found Article III standing to sue where the plaintiff did not own shares of certain funds.  Cf. In re Lord Abbett, 2005 WL 3544312, at *7 (Martini, J.); In re Franklin, 388 F. Supp. 2d at 461-62 (Martini, J.).  Those cases, however, rest upon a misconstruction of Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083 (3d Cir. 1975), whereby the court improperly expanded Haas and applied its reasoning to an Article III analysis.  Haas, without any detailed Article III standing analysis, merely recognized the discretion of the district court in assessing whether a plaintiff satisfied Federal Rule of Civil Procedure 23(a) for class certification purposes, in circumstances very different from the instant action.  Id. at 1089.  The named plaintiff in Haas raised claims pursuant to consumer and commercial banking laws against one defendant, Mellon Bank.  Id. at 1088.  The court merely permitted the named plaintiff, who held a consumer account with defendant, to also challenge commercial transactions related to the same type of account.  See id.  Thus, Haas is clearly distinguishable from the present case where Plaintiffs, who hold only 9 of the Federated Funds, attempt to assert claims against 135 separate and distinct mutual funds.  Further, to the extent that the Haas court collapsed Article III standing with the class representation requirements under Rule 23, this clearly would not be appropriate under current law regarding mutual fund securities as to which standing must be viewed strictly.  Id. at 1088-89.  See Forsythe v. Sun Life Fin., Inc., ___ F. Supp. 2d. ___, Civil Action No. 04-10584-GAO, 2006 U.S. Dist. LEXIS 1948, at *51 (D. Mass. Jan. 19, 2006) (attached hereto as Exhibit 5) (strict standing requirements "are particularly important" in the securities litigation context); see also In re Eaton Vance II, 220 F.R.D. at 168 ("[T]he need for strict standing requirements are particularly important in the area of securities litigation, in order to curb the risks of vexatious litigation and abuse of discovery.") (citations and quotations marks omitted).  It should be noted that the In re Franklin court reminded plaintiffs to be "cognizant that derivative claims may only be brought against the three funds they owned and that they may not maintain a 'derivative class action.'"  See In re Franklin, 388 F. Supp. 2d at 468 n.13.  Further, the In re Lord Abbett court dismissed the plaintiffs Section 36(b) claim and noted that "Haas, discussed supra, would not allow Plaintiffs to bring Section 36(b) claims derivatively on behalf of Funds in which they have no ownership interest."  In re Lord Abbett, 2005 WL 3544312, at *15 (emphasis added).

constitutional standing because "standing requirements [are] particularly important . . . in the arena of securities litigation").  Given that the standing question bears on the constitutional power of a court to decide a case or controversy, standing is a threshold issue.  See Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir. 2002) (because standing "determines the court's fundamental power even to hear the suit" it must be decided prior to the certification inquiry) (citations omitted); see also Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998) (stating that the "requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (citations omitted).

Thus, "the question of standing is totally separate and distinct from the question of plaintiff's right to represent a purported class under Rule 23[.]  Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made[.]  The plaintiff's standing to bring an action . . . must be established independently of Federal Rule of Civil Procedure 23."  Weiner v. Bank of King of Prussia, 358 F. Supp. 684, 694-95 (E.D. Pa. 1973) (emphasis in original).[6]

Class certification involves issues of civil procedure governed by Federal Rule of Civil Procedure 23.  Proceedings based upon Rule 23 and orders entered pursuant to Rule 23 cannot enlarge a party's substantive rights or create standing or subject matter jurisdiction where it does not otherwise exist.  See Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 391 (1990) ("The Court has no authority to enact rules that 'abridge, enlarge or modify any substantive

---

[6]     See also In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. 38, 40 (D. Mass. 2003) ("Before delving into the law regarding class certification, it is necessary to address a challenge made by the defendants to this Court's jurisdiction.") (hereinafter "In re Eaton Vance I"); Hassine v. Jeffes, 846 F.2d 169, 175-76 (3d Cir. 1988) (the questions of standing and adequacy of a class representative "are in fact independent criteria" and standing is the "threshold inquiry") (citations and quotations omitted); In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1531 (D. Mass. 1991) ("Before this Court can address . . . certification issues . . . it must answer a threshold question:  Do each of the named plaintiff representatives have standing to assert the claims for which each class seeks to recover?") (emphasis in original).

right.'") (citing 28 U.S.C. § 2072 (Rules Enabling Act)); <u>Chevalier v. Baird Sav. Ass'n</u>, 66

F.R.D. 105, 109 (E.D. Pa. 1975) (citing Fed. R. Civ. P. 82 and explaining:  "Rule 23 cannot be

said to have broadened the concept of standing[.]  [A] plaintiff who lacks standing to sue a

defendant [cannot] acquire such status through class representation.") (citations and emphasis

omitted).  Accordingly, this Court should examine the threshold issue of standing prior to

addressing whether Plaintiffs may bring a purported class action under Rule 23.[7]

> **C.  The Juridical Link Doctrine Does Not Provide an Exemption from the Constitutional Standing Requirement**

With full knowledge of the weight of authority against them on the issue of

standing with respect to the Other Funds, Plaintiffs erroneously attempt to "plead" the legal

doctrine of "juridical link" in an effort to bring claims concerning the Other Funds.  Complaint ¶

156.  This Court should reject such blatant bootstrapping, as other district courts have done in

similar mutual fund cases.

The Third Circuit has never adopted the so-called juridical link doctrine.  The few

courts that have addressed the doctrine favorably have done so in very narrow circumstances –

<u>not</u> <u>present</u> <u>here</u> – when faced with a question concerning adequacy of class representatives

under Federal Rule 23.  <u>See</u> <u>La Mar v. H & B Novelty & Loan Co.</u>, 489 F.2d 462, 469-70 (9th

---

[7]      In similar cases, Plaintiffs' counsel have relied upon <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815 (1999), to contend that class certification issues should precede an Article III standing analysis.  As other courts have recognized, <u>Ortiz</u> is clearly distinguishable from the present case because <u>Ortiz</u> dealt with unique issues arising in the settlement of complex asbestos-related class actions.  The resolution of class certification issues was dispositive of the case as a whole in that <u>Ortiz</u> was a "settlement-only" case and "not intended to be litigated."  <u>In re Eaton Vance II</u>, 220 F.R.D. at 166.  Further, federal district courts have refused to apply <u>Ortiz</u>'s narrow holding in securities cases similar to the present case.  <u>See</u> <u>Forsythe</u>, 2006 U.S. Dist. LEXIS 1948, at *51-*52 n.18 (treating standing as a threshold inquiry and refusing to apply <u>Ortiz</u> in a "straightforward securities case"); <u>In re AllianceBernstein</u>, 2005 WL 2677753, at *9 (refusing to proceed directly to class certification issues without first addressing standing where many of the concerns mentioned by the <u>Ortiz</u> court were absent, and because standing requirements are of particular importance in the securities litigation context "in order to curb the risks of vexatious litigation and abuse of discovery") (quotation marks omitted); <u>In re Eaton Vance II</u>, 220 F.R.D. at 168-69 (refusing to apply the <u>Ortiz</u> holding to permit a plaintiff to evade constitutional standing requirements in a securities case because "[t]he principles at the heart of Article III standing are simply too important to permit such bootstrapping").

Cir. 1973); Moore v. Comfed Sav. Bank, 908 F.2d 834, 838-39 (11th Cir. 1990).  Indeed, in the

context of a constitutional standing analysis, courts have routinely recognized that "the [juridical

link] doctrine ha[s] nothing to do with Article III standing."  In re Eaton Vance II, 220 F.R.D. at

169-70; see also Easter v. Am. W. Fin., 381 F.3d 948, 962 (9th Cir. 2004) (plaintiff "cannot

acquire standing to sue those defendants who do not now hold and have never held the plaintiff's

loans through the juridical links doctrine"); Henry v. Circus Circus Casinos, Inc., 223 F.R.D.

541, 544 n.2 (D. Nev. 2004) ("The Court declines to import . . . 'juridical link' doctrine into an

Article III analysis.  A doctrine developed under Rule 23 based on judicial efficiency and

expedience does not play a role in an Article III standing analysis."); Forsythe, 2006 U.S. Dist.

LEXIS 1948, at *53 n.19 ("In the separate and distinct inquiry into a plaintiff's standing[,] the

juridical link doctrine is not relevant.").

        In rejecting application of the juridical link doctrine where the plaintiffs owned

shares in some, but not all, of the funds at issue, In re Eaton Vance II explained why the juridical

link doctrine should not apply to an Article III standing analysis:

> Underpinning the juridical link doctrine is the idea that "a single
> resolution of the dispute would be expeditious."  . . . Article III
> standing, however, does not often bend to expediency and the
> Supreme Court has warned against such an approach.  See Raines,
> 521 U.S. at 820 (stating that an Article III standing analysis cannot
> be abandoned "for the sake of convenience and efficiency");
> Valley Forge, 454 U.S. at 476 (stating that Article III standing "is
> not merely a troublesome hurdle to be overcome if possible so as
> to reach the merits of a lawsuit").
>
> The juridical link doctrine's emphasis on expediency made sense
> in light of the fact that the doctrine was originally created to help
> analyze Rule 23.  This is true because "Rule 23 is given liberal
> rather than restrictive construction, and courts are to adopt a
> standard of flexibility." . . . The requirements of Article III, on the
> other hand, tend to be "inflexible and without exception."  Steel
> Co., 523 U.S. at 94.  Article III imposes "fairly strict
> requirements," People to End Homelessness, Inc., 339 F.3d at 8,
> because "[n]o principle is more fundamental to the judiciary's
> proper role in our system of government than the constitutional
> limitation of federal-court jurisdiction to actual cases or

- 13 -

> controversies," <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26,
> 37 (1976).

<u>In re Eaton Vance II</u>, 220 F.R.D. at 170 (citations omitted).  <u>See also</u> <u>La Mar</u>, 489 F.2d at 469

(noting that juridical link doctrine is ill-suited for application to securities cases and that "courts

have manifested a marked degree of restraint" regarding standing in securities cases).

Accordingly, Plaintiffs cannot rely on the juridical link doctrine to satisfy

constitutional standing requirements.

**D.     Plaintiffs also Have Not Met the Statutory Requirements of Standing Under Section 36(b) of the ICA**

In addition to the constitutional standing deficiencies, Plaintiffs lack statutory

standing because they have failed to satisfy the express requirements of Section 36(b) of the

ICA.  <u>See</u> 15 U.S.C. 80a-35(b).  The statute expressly states that a civil action for an alleged

violation of Section 36(b) may only be brought by "a security holder of <u>such registered</u>

<u>investment company</u> on behalf of such company."  15 U.S.C. § 80a-35(b) (emphasis added).

Routinely, courts have dismissed Section 36(b) claims when plaintiffs lacked an

ownership interest in a particular fund.  <u>See</u> <u>Forsythe</u>, 2006 U.S. Dist. LEXIS 1948, at *47-*48

(dismissing Section 36(b) claims concerning 60 mutual funds named because plaintiffs were not

"current security holders" in those 60 funds); <u>In re American</u>, Case No. CV 04-5593-GAF

(RNBx), slip op., at 2 ("Plaintiffs lack standing to bring their Section 36(b) claim on behalf of

the funds in which they do not own shares."); <u>In re AllianceBernstein</u>, 2005 WL 2677753, at *10

(noting that the "conclusion [that plaintiffs cannot establish standing under Section 36(b) because

they cannot claim any injuries caused by advisers of funds in which they have not purchased

shares] is strengthened by the literal reading of the text of Section 36(b), which states that an

action may only be brought by either the SEC 'or by a *security holder of such registered*

*investment company*'") (emphasis in original).

In the recent case captioned <u>In re American Mutual Funds Fee Litigation</u>, plaintiffs (who are represented by the same counsel as the named plaintiffs in this action) brought similar claims under the ICA, IAA, and state law.  <u>In re American</u>, Case No. CV 04-5593-GAF (RNBx), slip op., at 1.  Plaintiffs there sought to assert claims with respect to nineteen (19) mutual funds that they owned and ten (10) funds that no named plaintiff owned.  <u>Id.</u> at 1-2.  Based on the plain language of Section 36(b) and other factors, the court held that plaintiffs lacked standing with respect to the funds in which they held no interest.  <u>Id.</u> at 2.  In reaching this holding, the court found that "[t]raditional standing analysis dictates that these ten nominal defendants should be dismissed because plaintiffs cannot recover from defendants who caused them no injury in fact" and "it bears repeating that a person cannot predicate standing on injury which he does not share."  <u>Id.</u> (citations omitted).

In this case, too, the Court should reject claims asserted by the named Plaintiffs' counsel with respect to mutual funds in which Plaintiffs have <u>no</u> ownership or beneficial interest. Having no stake in those Other Funds, or access to any potential recovery from those funds, Plaintiffs lack standing to pursue their Section 36(b) claims.  Accordingly, Plaintiffs' Section 36(b) claims relating to the Other Funds should also be dismissed for lack of statutory standing.[8]

---

[8]     Indeed, in prior briefing in <u>this litigation</u> concerning the coordination of this case and related actions against Defendants, other plaintiffs have recognized the proper standing limitation on a shareholder's ability to sue under Section 36(b).  Specifically, counsel for Plaintiff Gretchen Reaves has acknowledged that "[t]here is accordingly no such thing as a valid complaint under Sec. 36(b) in the absence of a representative shareholder[.]"  Memorandum of Plaintiff Gretchen W. Reaves In Opposition To The Brever Plantiffs' Motion For Leave From Stay And For Leave To File An Amended Complaint And Substitute Plaintiffs In <u>Randall C. Brever v. Federated Equity Management Company, et al</u>, Civil Action No. 04cv0855, at p. 6 (attached hereto as Exhibit 6); <u>see also</u> Withdrawal By Plaintiff Gary M. Bauer Of Motion For Consolidation And Motion For Appointment Of Co-Lead Counsel And Appointment of Liaison Counsel And Joinder In Opposition To Motion For Consolidation And Motion For Appointment Of Co-Lead Counsel And Appointment Of Liaison Counsel, in <u>Brever</u>, at ¶ 3 ("The *Spahn* and *Fetzer* plaintiffs lack standing to sue on behalf of the 127 funds in the Federated Mutual Fund Complex that they do not own.") (attached hereto as Exhibit 7).

III.   **PLAINTIFFS' CLAIMS UNDER SECTIONS 36(a) AND 48(a) OF THE ICA MUST BE DISMISSED BECAUSE NO IMPLIED PRIVATE RIGHT OF ACTION EXISTS UNDER ANY SECTION OF THE ICA**

Plaintiffs' claims under Sections 36(a) and 48(a) of the ICA fail as a matter of law because neither section confers any private right of action.  See 15 U.S.C. §§ 80a-35(a) and 80a-47(a).  Section 36(a) states only that the SEC is authorized to bring an action for a "breach of fiduciary duty involving personal misconduct" by an investment company's director, officer, investment advisor, depositor, or distributor.  15 U.S.C. § 80a-35(a).  The plain language of the statute does not provide for private enforcement by any shareholder.  Cf. 15 U.S.C. § 80a-35(b) (creating an express private right of action).  Section 48(a) similarly states that "[i]t shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder."  15 U.S.C. § 80a-47(a).  In absence of express statutory authorization for a private right of action under Section 36(a) and 48(a), the Court cannot presume that Congress intended to create an implied private right of action and Plaintiffs must meet the heavy burden of demonstrating otherwise.  See Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 433 (2d Cir. 2002) ("A strong presumption [from textual analysis] that Congress did not intend a private right of action places a heavy burden on the plaintiffs to demonstrate otherwise.").

In a series of cases against mutual fund companies, including many cases based on nearly identical complaints (brought by the same counsel representing Plaintiffs in this action), an overwhelming number of courts – including this district – have held that no implied private right of action exists under either Section 36(a) or 48(a) of the ICA.  See, e.g., Forsythe, 2006 U.S. Dist LEXIS 1948, at *17 (holding that there is no private right of action under Sections 36(a) or 48(a)); In re Goldman Sachs Mut. Funds Fee Litig., No. 04 Civ. 2567(NRB), 2006 WL 126772, at *5 (S.D.N.Y. Jan. 17, 2006) (no private right of action under Section 36(a)) (attached hereto as Exhibit 8); In re American, Case No. CV 04-5593-GAF (RNBx), slip op., at 3

(no private right of action under Section 36(a)); <u>In re Mut. Funds Inv. Litig.</u>, (In re EXCELSIOR, Federated, Scudder and AMCAP [Federated Sub Track]), Nos. MDL 1586, 04-MD-15861, 04-928, 04-933, 2005 WL 3038695, at *5 (D. Md. Nov. 3, 2005) (adopting reasoning from Investor Class Opinion and Fund Derivative Opinion issued by Judge Motz on August 25, 2005, in No. 04-md-15863 holding no private right of action under Section 36(a)) (attached hereto as Exhibit 9); <u>Stegall</u>, 394 F. Supp. 2d at 371 (no private right of action under Section 36(a)); <u>Hamilton v. Allen</u>, 396 F. Supp. 2d 545, 555 (E.D. Pa. 2005) (same); <u>In re Davis Selected Mut. Funds Litig.</u>, No. 04 Civ. 4186(MGC), 2005 WL 2509732, at *2 (S.D.N.Y. Oct. 11, 2005) (no private right of action under Sections 36(a) or 48(a)) (attached hereto as Exhibit 10); <u>In re Dreyfus Mut. Funds Fee Litig.</u>, Master File No. 04-0128, 2005 U.S. Dist. LEXIS 29152, at *24-*25 (W.D. Pa. Sept. 30, 2005) (no private right of action under Section 36(a)) (attached hereto as Exhibit 11); <u>In re Franklin</u>, 388 F. Supp. 2d at 464-67 (same); <u>In re Mut. Funds Inv. Litig.</u> (In re Janus SUBTRACK), 384 F. Supp. 2d 845, 870 (D. Md. 2005) (same); <u>In re Eaton Vance Mut. Funds Fee Litig.</u>, 380 F. Supp. 2d 222, 233 (S.D.N.Y. 2005) (no private right of action under 36(a) or 48(a)), <u>reconsideration granted with court adhering to previous order</u>, 403 F. Supp. 2d 310, 320 (S.D.N.Y. 2005); <u>Dull v. Arch</u>, No. 05 C 140, 2005 WL 1799270, at *2-*3 (N.D. Ill. July 27, 2005) (no private right of action under 36(a)) (attached hereto as Exhibit 12); <u>Jacobs v. Bremner</u>, 378 F. Supp. 2d 861, 866 (N.D. Ill. 2005) (same); <u>Chamberlain v. Aberdeen Asset Mgmt. Ltd.</u>, No. 02 CV 5870(SJ), 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005) (same) (attached hereto as Exhibit 13), <u>vacated solely for purposes of settlement</u>, 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) (attached hereto as Exhibit 14).

 These aforementioned courts have consistently rejected the same supposed implied private right of action asserted here by Plaintiffs and applied binding Supreme Court authority from the following cases: <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 125 S.Ct. 2611 (2005); <u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001); <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994); <u>Transamerica Mortgage Advisers, Inc. v.</u>

Lewis, 444 U.S. 11 (1979).  More specifically, these aforementioned courts correctly concluded that the clear language of Sections 36(a) and 48(a) does not reflect any contemporaneous Congressional intent to imply a private right of action.  Indeed, these sections: (1) contain no "rights creating language"; (2) contemplate enforcement by the SEC; and (3) are readily distinguishable from Section 36(b) wherein Congress expressly created a private right of action.[9]  Cf. Olmsted, 283 F.3d at 433 ("Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional.").  Accordingly, this Court likewise should find that no implied private right of action exists here.

Prior to the Supreme Court's decision in Central Bank, 511 U.S. 164 (1994), a number of courts allowed plaintiffs to assert implied rights of action under Section 36(a) and other sections of the ICA without subjecting these asserted claims to careful textual and historical scrutiny.  See, e.g., Fogel v. Chestnutt, 668 F.2d 100, 112 (2d Cir. 1981) (finding an implied right of action under the ICA); Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings Inc., 825 F.2d 731, 736 (3d Cir. 1987) (finding an implied right of action under Section 12(d)(1)(A)).  These decisions were based on very liberal policies adopted by some courts in the 1960s (see, e.g., Brown v. Bullock, 194 F. Supp. 207 (S.D.N.Y. 1961), aff'd, 294 F.2d 415 (2d Cir. 1961)), long before the Supreme Court made clear that in the absence of express statutory language, Congressional intent to create an implied right of action could be established only

---

9       Section 36(a) states in relevant part:  "The Commission is authorized to bring an action in the proper district court of the United States, . . . alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts-- (1) as officer, director, member of any advisory board, investment adviser, or depositor . . ."  15 U.S.C. § 80a-35(a) (emphasis added).

through <u>contemporaneous</u> legislative history.  See <u>Sandoval</u>, 532 U.S. at 286-87; <u>accord</u> <u>Central</u> <u>Bank</u>, 511 U.S. at 173-174, 185-86. [10]

     After the Supreme Court's decision in <u>Central Bank</u> finding no implied private right of action for aiding and abetting violations of SEC Rule 10b-5, the Second Circuit Court of Appeals became the first Circuit Court to consider whether an implied private right of action exists under a section of the ICA.  In declining to find an implied private right of action, the Second Circuit in <u>Olmsted</u> noted that when those earlier cases finding implied private rights of action under the ICA were decided, "courts had more latitude to weigh statutory policy and other considerations than they do now."  <u>Olmsted</u>, 283 F.3d at 434.[11]  The <u>Olmsted</u> court noted that those "[p]ast decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an '<u>ancien</u> <u>regime</u>'" and were inconsistent with the analysis now mandated by the Supreme Court.  <u>Id.</u> (quoting <u>Sandoval</u>, 532 U.S. at 287 (internal quotation marks omitted)) (emphasis in original).  See also <u>Boland v. Engle</u>, 113 F.3d 706, 715 n.9 (7th Cir. 1997) (stating that <u>Central Bank</u> "has cast doubt on the type of analysis that courts have used to find implied rights of action [under the ICA]").

     Plaintiffs are therefore prohibited from using prior decisions from the "<u>ancien</u> <u>regime</u>" to bolster their claims under Sections 36(a) and 48(a).  Rather, this Court must examine each ICA section for evidence of contemporaneous Congressional intent to imply a private right of action.

     The Western District Court of Pennsylvania recently recognized the departure from reliance on the <u>ancien</u> <u>regime</u> of cases in <u>In re Dreyfus Mutual Funds Fee Litigation</u>,

---

10    In similar cases filed by the same lawyers as in the present case, Plaintiffs' counsel has contended that the <u>subsequent</u> legislative history of the ICA supports a private right of action. For the reasons stated herein, those contentions must fail.

11    In a footnote, the Court listed several of those earlier decisions finding an implied right of action, including five decisions under Section 36(a), as well as the Third Circuit's decision in <u>Bancroft Convertible Fund, Inc.</u>, which found that an implied private right of action existed under Section 12(d)(1)(A).  <u>Olmsted</u>, 283 F.3d at 434 n.4.

Master File 04-0128, 2005 U.S. Dist. LEXIS 29152 (W.D. Pa. Sept. 30, 2005).  The In re

Dreyfus court noted that previous courts within the Third Circuit, including the court in Bancroft

Convertible Fund, found implied private rights of action under the ICA.  Id. at *19 n.5.

Nevertheless, the In re Dreyfus court held that no implied private right of action existed under

Section 36(a) of the ICA and explained that Bancroft and other prior Third Circuit opinions that

found an implied private right of action relied heavily upon a rule of statutory interpretation that

"has been strongly rejected in more recent Supreme Court opinions."  Id. at *19 n.5, *24 (citing

Sandoval); see also meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.,

260 F. Supp. 2d 616, 621-25 (S.D.N.Y. 2003) (agreeing with the defendants that Bancroft

Convertible Fund and other cases pre-dating the Supreme Court's decision in Sandoval belonged

to the "ancien regime" and holding that no private right of action exists under Section

12(d)(1)(A) of the ICA); In re American, Case No. CV 04-5593-GAF (RNBx), slip op., at 3-4

(noting that "[n]o federal court since Sandoval . . . has found an implied right of action under the

ICA" and that cases pre-dating Sandoval belong to the "ancien regime") (quotation marks and

citations omitted).[12]

## IV.    PLAINTIFFS' CLAIMS UNDER SECTION 36(b) FAIL TO PLEAD ANY FACTS REGARDING THE CHALLENGED FEES PAID BY THE OTHER FUNDS[13]

Plaintiffs fail to make any factual allegations that would support a cause of action

for excessive fees under Section 36(b) with respect to the Other Funds.  Indeed, Plaintiffs fail to

---

[12]    Again, courts in numerous additional cases recently applied Olmsted and held that no private right of action exists under Section 34(b) and/or 36(a), despite the fact that previous courts had found a private right of action under those sections.  See supra, at 16-17.

[13]    Plaintiffs assert a class period of March 8, 1999 to the present.  Complaint ¶1.  However, under Section 36(b), "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3).  Therefore, at a minimum, Plaintiffs' Section 36(b) claim must be limited to this period.

even mention the Other Funds in the Complaint.  Thus, the Section 36(b) claims regarding the

Other Funds must be dismissed for Plaintiffs' failure to even attempt to meet recognized

pleading standards.

Section 36(b) of the ICA provides that investment advisers have a "fiduciary duty

with respect to the receipt of compensation" from mutual funds, and that "plaintiff shall have the

burden of proving a breach of fiduciary duty."  15 U.S.C. § 80a-35(b).  To state a claim under

Section 36(b), a plaintiff must plead <u>facts</u> demonstrating that the challenged fee for <u>each fund</u> is

"so disproportionately large that it bears no reasonable relationship to the services rendered and

could not have been the product of arm's-length bargaining."  <u>Gartenberg v. Merrill Lynch Asset</u>

<u>Mgmt., Inc.</u>, 694 F.2d 923, 928 (2d Cir. 1982); <u>see also</u> <u>Migdal v. Rowe Price-Fleming Int'l,</u>

<u>Inc.</u>, 248 F.3d 321, 327 (4th Cir. 2001) ("[A] plaintiff must allege facts that, if true, would

support a claim that the fees at issue are excessive."); <u>Krantz v. Prudential Inv. Fund Mgmt.</u>

<u>LLC</u>, 305 F.3d 140, 143 (3d Cir. 2002) (dismissing claim with respect to excessive compensation

where Plaintiff failed to allege any facts indicating that the fees received were disproportionate to

services rendered).

Accordingly, Plaintiffs must at minimum, allege a relationship between the fees

charged and the services rendered to survive dismissal.  <u>See</u> <u>Midgal</u>, 248 F.3d at 327 ("[I]n order

to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the

relationship between the fees charged and the services rendered by the investment adviser."); <u>In</u>

<u>re Goldman Sachs</u>, 2006 WL 126772, at *9 ("In the end, plaintiffs' failure to allege facts that

suggest anything about the relationship between the advisory fees and the services rendered is

fatal to their claim."); <u>Hamilton</u>, 396 F. Supp. 2d at 557 ("<u>Migdal</u> and <u>Krantz</u> make it clear that a

plaintiff asserting a claim for breach of fiduciary duty with respect to excessive compensation

require that a plaintiff provide specific information regarding the relationship between the fees and services provided."); cf. In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04 Civ. 4885(SWK), 2006 WL 74439, at *2-*3 (S.D.N.Y. Jan. 11, 2006) (dismissing claim under Section 36(b) where, inter alia, plaintiffs' allegations covering four years, but only four months within the relevant Section 36(b) time period, considerably weakened their economies of scale argument).

Indeed, the plain language of Section 36(b) mandates that a plaintiff plead and prove fund-specific allegations:

> An action may be brought under [Section 36(b) of the ICA] by the Commission, or by a security holder of such registered investment company on behalf of such company . . . for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company. . . .

15 U.S.C. § 80a-35(b) (emphasis added). As this language makes clear, Congress never intended, nor should this Court allow, a plaintiff to bring suit challenging the fees of different mutual funds based on general allegations directed at the fund complex and the overall mutual fund industry. The mere fact that advisory fees may be deemed excessive as to one specific and legally distinct fund does not necessarily mean that advisory fees for other funds within the same complex are excessive as well. Cf. Migdal, 248 F.3d at 327 (stating that "plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants").

Plaintiffs must plead a separate case under Section 36(b) for each of the funds on whose behalf relief is sought. Yet the Complaint does not allege any facts as to the Other Funds. As a practical matter, the obligation to allege facts about each fund is particularly important

given the wide variety among individual funds in the amount of fees paid, fee structures, investment styles and objectives, assets under management, distribution channels, etc.

Accordingly, Plaintiffs generalized, conclusory attacks do not meet their obligations under Section 36(b) and Plaintiffs' claims relating to the Other Funds must be dismissed.

## V.    PLAINTIFFS' SECTION 48(a) CLAIMS FAIL BECAUSE PLAINTIFFS FAIL TO PLEAD AN UNDERLYING PREDICATE VIOLATION

Plaintiffs assert a claim for control person liability under Section 48 against Federated for the procurement of purported acts by the Investment Advisor Defendants, Distributor Defendant, and Transfer Agent Defendant.  Complaint ¶¶ 172-77.  Section 48(a) of the ICA does not provide an independent basis of liability; rather, it regulates those who controlled any person liable under the ICA.  See 15 U.S.C. § 80a-47.  Accordingly, to the extent that Plaintiffs fail to state a claim under Sections 36(a) and 36(b) of the ICA, their claims under Section 48(a) must be dismissed.  See In re Goldman Sachs, 2006 WL 126772, at *10 (dismissing § 48(a) claim because plaintiffs failed to state a claim under Section 34(b), 36(a) and 36(b) of the ICA); In re Lord Abbett, 2005 WL 3544312, at *16 (same); In re American, Case No. CV 04-5593-GAF (RNBx), slip op., at 5 (same); In re Franklin, 388 F. Supp. 2d at 469 (same).

## VI.   PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE THEY ARE PREEMPTED BY SLUSA

Plaintiffs' efforts to circumvent The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") through artful pleading are obvious and inadequate and, consequently, their state law claims should be preempted by SLUSA.

After determining that meritless and abusive private lawsuits were harming the nation's securities markets, Congress enacted the Private Securities Litigation Reform Act, 15

U.S.C. § 78u-4, et seq., ("PSLRA") in 1995 to impose procedural and substantive restrictions on private securities suits in federal court, including heightened pleading requirements, more rigorous standards for class representation, and strict statutes of limitations.  Seeking to avoid the PSLRA's restrictions, securities class action plaintiffs began to frame their allegations of securities fraud as state-law causes of action and pursue relief in state court.  Congress enacted SLUSA to close this loophole and to ensure that national, federal standards would be applied to challenges involving publicly traded securities.  See Rowinski v. Salomon Smith Barney, Inc., 398 F.3d 294, 298-99 (3d Cir. 2005); see also Lander v. Hardford Life & Annuity Ins. Co., 251 F.3d 101, 107-08 (2d Cir. 2001).

Toward that end, SLUSA preempts and requires dismissal of any state-law claim that meets the following four criteria:  (1) a covered class action; (2) based on state law; (3) involving a covered security; and (4) an allegation that the defendant misrepresented or failed to disclose a material fact, or used or employed any manipulative or deceptive device or other contrivance, in connection with the purchase or sale of such security.  See 15 U.S.C. § 77p(b); 15 U.S.C. § 78bb(f)(1); see also Rowinski, 398 F.3d at 299.

Furthermore, SLUSA cannot be sidestepped by an inventive complaint drafter.  Indeed, SLUSA is recognized as "an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting."  Rowinski, 398 F.3d at 304.  The presence or absence of a key word or phrase is not determinative of SLUSA's applicability, but rather whether a reasonable reading of the complaint reveals allegations generally within SLUSA's purview.  Id.; see also Korsinksy v. Salomon Smith Barney Inc., No. 01 Civ. 6085(SWK), 2002 WL 27775, at *2 (S.D.N.Y. Jan. 10, 2002) (citations omitted) (a court may "look behind the complaint" to prevent a plaintiff from "disguising a federal claim as a claim

arising under state law.") (attached hereto as Exhibit 15); <u>Gibson v. PS Group Holdings, Inc.</u>, No. 00-CV-0372 W(RBB), 2000 WL 777818, at *4 (S.D. Cal. Mar. 8, 2000) (SLUSA "demands that the Court look beyond the face of the Plaintiff's pleadings") (attached hereto as Exhibit 16); <u>Prof'l Mgmt. Assoc., Inc. Employees' Profit Sharing Plan v. KPMG LLP</u>, 335 F.3d 800, 803 (8th Cir. 2003) (citations omitted), <u>cert. denied</u>, 540 U.S. 1162 (2004) (plaintiff "cannot avoid preemption [under SLUSA] by asserting it is only claiming damages suffered as a result of holding its stock"); <u>Ray v. Citigroup Global Markets, Inc.</u>, No. 03 C 3157, 2003 WL 22757761, at *6 (N.D. Ill. Nov. 20, 2003) (holding that "a plaintiff may not avoid SLUSA's restrictions simply by alleging that a given misrepresentation caused him both to purchase and hold a particular security") (attached hereto as Exhibit 17); <u>Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 292 F.3d 1334, 1345 (11th Cir. 2002) (same), <u>cert. denied</u>, 537 U.S. 950 (2002); <u>Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 189 F. Supp. 2d 14 (S.D.N.Y. 2001) (same).

In their most recent Complaint, Plaintiffs obviously attempt to plead around SLUSA.  Indeed, Plaintiffs create a "State Law Subclass" that purportedly consists of all persons that acquired shares prior to the beginning of Plaintiffs' proposed class period, and further, "excludes any and all claims involving transactions that constitute a 'purchase' within the meaning of [SLUSA]."  Complaint ¶ 1.  This proposed subclass is precisely the type of litigation engineering Congress intended to prevent when it enacted SLUSA, and Plaintiffs' reliance on this type of artful pleading should be rejected. <u>See</u> <u>Kircher v. Putnam Funds Trust</u>, 403 F.3d 478, 484 (7th Cir. 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court . . . . It is the very sort of maneuver that SLUSA is designed to prevent.").

Despite their attempts at artful pleading, Plaintiffs' state law claims (Counts IV-VI) meet each of the enumerated criteria, as set forth below, and consequently, SLUSA preempts and effectively prohibits Plaintiffs' claims.

1.  Plaintiffs' Amended Complaint Presents a Covered Class Action

Under SLUSA, a "covered class action" is a lawsuit in which "[d]amages are sought on behalf of more than 50 persons or prospective class members. . . ."  15 U.S.C. § 78bb(f)(5)(B)(i)(I).  Here, Plaintiffs purport to bring various class action claims on behalf of a nationwide class or subclass of shareholders of the Federated Funds over the span of nearly 7 years.  See Complaint ¶ 1.  Indeed, Plaintiffs expressly allege that their class and subclasses number in the thousands.  Complaint ¶ 154.  Clearly, Plaintiffs' lawsuit meets SLUSA's definition of a "covered class action."

2.  Plaintiffs Assert State Law Claims

Likewise, there is no question that Counts IV-VI for breach of fiduciary duty and unjust enrichment are brought pursuant to state law.  In fact, these claims are made on behalf of Plaintiffs' "State Law Subclass."  See Complaint ¶¶ 178-190.

3.  The Federated Fund Shares are Covered Securities

There also is no dispute that the Federated Fund shares at issue are "covered" securities, which are defined as securities that satisfy the standards of the Securities Act of 1933 §§ 18(b)(1) and (b)(2), including those "securit[ies] issued by an investment company that is registered, or that has filed a registration statement, under the [ICA]."  See 15 U.S.C. §§ 77p(f)(3), 77r(b); see also In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig., 105 F. Supp. 2d 1037, 1040 (D. Minn. 2000).

4.      Plaintiffs Allege Misrepresentations and Omissions
        In Connection With a Sale or Purchase

Finally, SLUSA preemption requires that Plaintiffs allege that the defendant misrepresented or failed to disclose a material fact in connection with the purchase or sale of such security, or that the defendant used or employed any manipulative or deceptive device or other contrivance in connection with the sale of a covered security.  15 U.S.C. § 77p(b); 15 U.S.C. § 78bb(f)(1).  Although Plaintiffs creatively attempt to avoid this requirement, the crux of their allegations is a fraudulent scheme involving payments to brokers to induce them to "push" the Federated Funds "instead of other fund companies' funds" without regard for whether other securities might present a better investment option, and the alleged use of Fund assets to make additional payments to brokers to push the Federated Funds on yet more unwitting investors. See, e.g., Complaint ¶¶ 77-78, 107.

Significantly, a number of recent cases, brought by the same Plaintiffs' counsel here, held that similar state law claims were preempted by SLUSA.  In In re Dreyfus, defendants allegedly obtained "substantial payments as a result of pushing Dreyfus Funds on unwitting investors."  In re Dreyfus, 2005 U.S. Dist. LEXIS 29152, at *11-*12.  As in the instant action, plaintiffs alleged "Shelf-Space agreements", "Revenue Sharing" and "Soft Dollars."  Id.  In finding SLUSA preemption, the court acknowledged the necessary connection between such an alleged scheme and the purchase and sale of securities: "The whole purpose and effect of the alleged schemes was to boost sales of the Dreyfus funds in order to increase commissions, fees and charges.  Without a sale of a security, the scheme would have been an exercise in futility." Id. at *44-*45.  In re American, involved an alleged scheme where defendants "paid brokers to induce investors to purchase shares in American Funds mutual funds, and used the proceeds of the earnings from those funds to fund the payments to the brokers."  In re American, Case No.

CV 04-5593-GAF (RNBx), slip op., at 9.  Thus, the alleged scheme "motivated brokers to push

the sale" of American Funds, was perpetrated "without the knowledge of the investors" and

"deceived investors about the returns they would earn."  Id.  The court concluded that such an

alleged scheme was "plainly" in connection with the purchase or sale of securities and, therefore,

preempted by SLUSA.  Id. at 8.  Plaintiffs' state law claims were dismissed with prejudice.  Id.

at 8-9.  See also In re Franklin, 388 F. Supp. 2d at 471-73 (finding SLUSA's "in connection"

requirement satisfied where the "purpose [of the alleged scheme] was to push investors into

mutual funds in order to increase fees and other charges" because "the only way for this scheme

to succeed was for investors to purchase securities"); In re Lord Abbett, 2005 WL 3544312, at

*10 (same).

   As a result of these recent decisions against Plaintiffs' counsel here, Plaintiffs

make a novel attempt at "artful pleading," creating the present State Law Subclass.  In this

instance, having exhausted their creativity as an artful pleader, Plaintiffs ask this Court to

become an "artful reader."  Specifically, Plaintiffs' State Law Subclass "excludes any and all

claims involving transactions that constitute a 'purchase' within the meaning of [SLUSA]."  See

Complaint ¶ 153.  Further, for purposes of the state law claims, Plaintiff "expressly excludes and

disclaims any allegation that could be construed as alleging fraud or deception."  Complaint ¶¶

178, 182, 187.  Essentially, Plaintiffs do not plead the allegations upon which state law claims

may be based.  Instead, they tell this Court that they would like to bring state law claims, and

then leave it to the Court, the "artful reader," to craft an opinion that would avoid SLUSA

preemption based upon these allegations.  Such obvious and clumsy efforts to circumvent

SLUSA preemption through artful pleading should be rejected as inconsistent with Congress's

intent in enacting SLUSA.[14]  See Kircher, 403 F.3d at 484 ("[P]laintiffs' effort to define non-

purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class

action in state court . . . .  It is the very sort of maneuver that SLUSA is designed to prevent.");

see also Disher v. Citigroup Global Mkts., Inc., 419 F.3d 649, 655 (7th Cir. 2005) (holding that

plaintiff's claims satisfied SLUSA's "in connection with" requirement even though plaintiff

sought to represent holders and specifically excluded any claims based on class members'

purchases and sales of securities); In re Dreyfus, 2005 U.S. Dist. LEXIS 29152, at *43-*44

(stating that even if plaintiffs asserted a "true 'holder' case, we would not automatically conclude

that the state law claims were not preempted under SLUSA[.]  [W]e note that SLUSA's

preemption language is not limited to cases involving damages that were suffered as a result of

the purchase or sale of securities[.]  Instead, preemption under SLUSA focuses on whether

untrue statement or omissions of material fact were made in connection with the sale or purchase

of securities[.]  [P]reemption determination is not a 'name game'; the fact that a plaintiff calls its

case a "holder class action' does not make it so"); In re Eaton Vance, 380 F. Supp. 2d at 241

("[W]here 'the complaint does not include sufficient information to permit the court to identify

and separate the preempted and non-preempted subclasses, … the proper approach will

ordinarily be to dismiss the entire claim pursuant to SLUSA.'") (citations omitted).

      Here, regardless of how Plaintiffs define the State Law Subclass, Plaintiffs'

alleged scheme necessarily involves purchases of securities.  Although Plaintiffs have attempted

to remove any reference to fraud or misrepresentations from the earlier iteration of their

Complaint, the underlying factual allegations and essence of Plaintiffs' alleged scheme has not

---

14     Alternatively, if the Court determines that Plaintiffs may plead around SLUSA by merely
stating that the Court should read any SLUSA implications out of the Complaint, Defendants
move for a more definite pleading in order to be able to assess the factual allegations upon which
Plaintiffs' state law claims are based.

changed.  Plaintiffs continue to allege that the Federated Defendants engaged in, <u>inter alia</u>, "shelf space", "revenue sharing" and "soft dollar" arrangements.  <u>See, e.g.</u>, Complaint ¶¶ 77-78, 100-01.  Tellingly, these are the very practices that Plaintiffs previously labeled as deceptive and upon which Plaintiffs based misrepresentation-based claims.  Plaintiffs consistently allege that the allegedly excessive fees were paid based upon a percentage of fund assets.  Complaint ¶¶ 49-52.  Consequently, like the recent decisions involving Plaintiffs' counsel referenced above, Plaintiffs' alleged scheme necessarily connects with the purchase and sale of the Federated Funds.  Indeed, the whole purpose of the alleged scheme was to boost sales of the Federated Funds through a broker bias not appreciated by unwitting investors in order to increase fees based upon a percentage of the assets of the funds.  Without a sale, the scheme would have been an "exercise in futility."

Accordingly, Plaintiffs' efforts to avoid SLUSA's flexible preemptive scope through a carefully crafted class definition should be afforded no weight and their state law claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  March 3, 2006

Respectfully Submitted,

**REED SMITH LLP**

By: _____s/Perry A. Napolitano_____
    Thomas L. Allen, PA 33243
    Perry A. Napolitano, PA 56789
    Joseph E. Culleiton, PA 82823
    Casey C. Dick, PA 93818
    James L. Rockney, PA 200026
    435 Sixth Avenue
    Pittsburgh, PA 15219
    Telephone:  (412) 288-3131
    Facsimile: (412) 288-3063
    tallen@reedsmith.com
    pnapolitano@reedsmith.com
    jculleiton@reedsmith.com
    cdick@reedsmith.com
    jrockney@reedsmith.com

*Attorneys for Defendants Federated Investors, Inc., Federated Investment Management Company, Federated Global Investment Management Corp., Federated Equity Management Company of Pennsylvania, Federated Securities Corp., and Federated Shareholder Services Company*