**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ) | **Electronically Filed** |
| **In re FEDERATED MUTUAL FUNDS** ) | |
| **EXCESSIVE FEE LITIGATION** ) | Consolidated No. 2:04-cv-352-DSC |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF FEDERATED DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Thomas L. Allen, PA 33243
Perry A. Napolitano, PA 56789
Joseph E. Culleiton, PA 82823
David J. Bird, PA 92424

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 288-3131
Facsimile:  (412) 288-3063

*Attorneys for Defendants Federated
Investors, Inc., Federated Investment
Management Company, Federated Equity
Management Company, and Federated
Global Investment Management Corp.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ................................................................................................... 6

I.  Plaintiffs Must Allege Concrete Facts That Suggest
    That Federated Has Breached Its Fiduciary Duty
    Under Section 36(b)................................................................................. 6

    A.  Plaintiffs' Section 36(b) Claim Must Be Supported
        By Concrete Factual Allegations That Raise Their
        Right To Relief Above The "Speculative" Level ................................. 6

    B.  A Section 36(b) Claim Must Be Supported By
        Concrete Factual Allegations That Suggest That A
        Mutual Fund Investment Adviser Failed To Act
        With Candor and Deceived The Fund's Independent
        Trustees In Connection With The Trustees' Approval
        Of The Adviser's Annual Contract and Fees........................................ 7

II. Plaintiffs' Consolidated Amended Complaint
    Should Be Dismissed Under Jones .............................................................. 13

III. Plaintiffs' Conclusory Allegations Concerning Comparative
     Fees, Profits, And Other So-Called Gartenberg Factors
     Do Not Save Their Section 36(b) Claim..................................................... 16

    A.  Plaintiffs' Comparative Fees Allegations ............................................ 16

    B.  Plaintiffs' Profitability And Economies
        Of Scale Allegations ........................................................................... 21

    C.  Plaintiffs' Performance Allegations..................................................... 24

    D.  Plaintiffs' Disagreements With The
        Structure Of FKF's Board And The
        Conclusions Of Its Independent Trustees ............................................ 26

CONCLUSION................................................................................................. 28

## PRELIMINARY STATEMENT

This litigation began on March 8, 2004, when Plaintiffs' counsel filed a putative

class action asserting seven causes of action under a variety of state and federal laws with respect

to numerous fees charged to more than 140 mutual funds sponsored and managed by Federated

Investors, Inc. and its subsidiaries and affiliates ("Federated").  Thereafter, Plaintiffs' counsel

filed six additional lawsuits challenging the fees charged to various Federated mutual funds.  In

2006, this Court's rulings on motions to dismiss and stipulations of the parties significantly

reduced the scope of the litigation to four cases on behalf of nine specific funds, which

challenged only four fees pursuant to Section 36(b) of the Investment Company Act of 1940 (the

"ICA").  In February 2008, the parties engaged in unsuccessful mediation, following which

Plaintiffs voluntarily dropped their Section 36(b) claims concerning eight of nine funds and

narrowed the scope of their remaining Section 36(b) claim concerning Federated Kaufmann

Fund ("FKF").  Specifically, the Consolidated Amended Complaint ("CAC")[1] limits Plaintiffs'

Section 36(b) claim to the advisory fee charged to just one Federated fund, FKF.

Since the passage of Section 36(b) in 1970, the federal courts have unanimously

rejected claims that fees charged for advisory services violated an adviser's fiduciary duty.  The

withering of this litigation mirrors similar litigation filed by the same counsel around the

---

[1]    Plaintiffs' CAC, filed June 11, 2008, consolidates the following four actions:  (1) In re
Federated Mutual Funds Excessive Fee Litigation, No. 2:04-cv-352; (2) Reaves v. Federated
Investors, Inc., No. 2:05-cv-201; (3) the Bauer/Burres Consolidated Action, Nos. 2:04-cv-702
and 2:04-cv-855; and (4) Zucker v. Federated Shareholder Services Co., No. 2:06-cv-00241.  As
a result, five different Plaintiffs purport to bring Section 36(b) claims during four different one-
year look back periods.  Section 36(b) states that "[n]o award of damages shall be recoverable
for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3);
Brever v. Federated Equity Mgmt. Co., 233 F.R.D. 429, 433 (W.D. Pa. 2005) (Cercone, J.)
(stating that "damages are recoverable only for one year prior to the commencement of the
action").  Plaintiffs' purported look back periods are:  June 28, 2003 – June 28, 2004; February
24, 2004 – February 24, 2005; January 17, 2005 – January 17, 2006; and June 11, 2007 – June
11, 2008.

country, in which at least seventeen such cases have been dismissed for failure to state a claim,[2]

and two others have been thrown out on summary judgment. Plaintiffs' newly narrowed Section

36(b) claim in this case is one of only three such cases filed by Plaintiffs' counsel since 2003 that

are still pending. See In re Am. Mut. Funds Fee Litig., No. 2:04cv5593 (C.D. Cal. filed July 15,

2004); Bennett v. Fidelity Mgmt. & Research Co., No. 1:04cv11651 (D. Mass. filed July 23,

2004). This case is now ripe to join the long list of dismissed Section 36(b) actions.

Traditionally, courts have analyzed Section 36(b) claims under the standard

announced by the United States Court of Appeals for the Second Circuit in Gartenberg v. Merrill

Lynch Asset Management, Inc., 528 F. Supp. 1038 (S.D.N.Y. 1981), aff'd, 694 F.2d 923 (2d Cir.

1982). In Gartenberg, the Second Circuit held that, in order to establish a claim under Section

36(b), a plaintiff must show that a mutual fund investment adviser has charged the fund "a fee

---

2      See In re Salomon Smith Barney Mut. Fund Fees Litig., 528 F. Supp. 2d 332, 334
(S.D.N.Y. 2007); Alexander v. Allianz Dresdner Asset Mgmt. of Amer. Holding, Inc., 509 F.
Supp. 2d 190, 196 (D. Conn. 2007); Boyce v. AIM Mgmt. Group, Inc., No. 4:04cv02587, slip
op. at 13 (S.D. Tex. Sept. 17, 2007); In re Scudder Mut. Funds Fee Litig., No. 1:04cv1921, 2007
WL 2325862, at *18 (S.D.N.Y. Aug. 14, 2007); In re Morgan Stanley and Van Kampen Mut.
Funds Sec. Litig., No. 1:03cv8208, 2006 WL 1008138, at *14 (S.D.N.Y. Apr. 18, 2006); In re
Blackrock Mut. Funds Fee Litig., No. 2:04cv164, slip op. at 20 (W.D. Pa. Mar. 29, 2006);
Pfeiffer v. Bjurman, Barry & Assocs., No. 1:03cv9741, 2006 WL 497776, at *6 (S.D.N.Y. Mar.
2, 2006), aff'd, 215 F. App'x 30, 32 (2d Cir. Jan. 25, 2007); In re Goldman Sachs Mut. Funds
Fee Litig., No. 1:04cv2567, 2006 WL 126772, at *12 (S.D.N.Y. Jan. 17, 2006), appeal
dismissed, No. 06-0926 (2d Cir. Apr. 25, 2007); In re AllianceBernstein Mut. Fund Excessive
Fee Litig., No. 1:04cv4885, 2006 WL 74439, at *3 (S.D.N.Y. Jan. 11, 2006), appeal dismissed,
No. 06-3158 (2d Cir. July 17, 2007); In re Lord Abbett Mut. Funds Fee Litig., 463 F. Supp. 2d
505, 515-16 (D.N.J. 2006), appeal docketed, No. 07-1112 (3d Cir. June. 25, 2008); In re Merrill
Lynch Inv. Mgmt. Funds Sec. Litig., 434 F. Supp. 2d 233, 241 (S.D.N.Y. 2006), appeal
dismissed, No. 06-3393 (2d Cir. Sept. 5, 2006); In re Oppenheimer Funds Fees Litig., 426 F.
Supp. 2d 157, 159 (S.D.N.Y. 2006), appeal dismissed, No. 06-2326 (2d Cir. Apr. 13, 2007); In re
Evergreen Mut. Funds Fee Litig., 423 F. Supp. 2d 249, 265 (S.D.N.Y. 2006); In re Dreyfus Mut.
Funds Fee Litig., 428 F. Supp. 2d 357, 360-61 (W.D. Pa. 2006); In re Davis Selected Mut. Funds
Litig., No. 1:04cv4186, 2005 WL 2509732, at *5 (S.D.N.Y. Oct. 11, 2005), appeal dismissed,
No. 05-6936 (2d Cir. Apr. 25, 2007); In re Eaton Vance Mut. Funds Fee Litig., 403 F. Supp. 2d
310, 320 (S.D.N.Y. 2005), aff'd sub nom., Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118
(2d Cir. 2007); Pfeiffer v. Integrated Fund Serv., Inc., 371 F. Supp. 2d 502, 510 (S.D.N.Y. 2005).

that is so disproportionately large that it bears <u>no reasonable relationship</u> to the services rendered

and <u>could not have been</u> the product of arm's-length bargaining" (the "<u>Gartenberg</u> standard").

<u>Gartenberg</u>, 694 F.2d at 928 (emphasis added) (citations omitted).  The plaintiff in <u>Gartenberg</u>

failed to establish a claim under Section 36(b) in part because the fees had been approved by

highly qualified independent directors/trustees who governed the fund and oversaw the conduct

of the fund's investment adviser.  <u>Gartenberg</u>, 528 F. Supp. at 1058.  Here, FKF's Statement of

Additional Information ("SAI") makes clear that Judge Pollack's description of the independent

trustees in <u>Gartenberg</u> is equally applicable in this case:  "[t]he non-interested Trustees are

[persons] of maturity and substantial stature with singular qualifications and experience in

diverse fields, having held positions of importance in the world of business, finance, investment

and education."  <u>Id.</u>; <u>see also</u> FKF, SAI Class A, B, C, and K Shares, pp. 19-22 (Dec. 31, 2007)

(attached hereto as Exhibit 1).  For example, the Lead Independent Trustee is Dr. John Murray,

the current Chancellor of Duquesne University, the former Dean of the University of Pittsburgh

and Villanova University Schools of Law, and one of the nation's foremost authorities on

contract law and the author of the widely cited treatise, <u>Murray on Contracts</u>.  Similarly, the

cases following <u>Gartenberg</u> have consistently acknowledged that a plaintiff faces an extremely

heavy burden to allege and prove a Section 36(b) claim and have given great weight to the

business judgment of independent directors/trustees of a mutual fund, who approve advisory fees

annually pursuant to 15 U.S.C. § 80a-15(c).[3]  <u>See</u> <u>Krinsk</u>, 715 F. Supp. at 502 ("Inasmuch as the

---

[3]      Several courts, when analyzing claims under <u>Gartenberg</u>, have employed a <u>process</u> that
examines a non-exhaustive list of six factors when determining the propriety of a fee under
Section 36(b) (the "<u>Gartenberg</u> process"):  (1) the nature and quality of services provided to the
fund; (2) the profitability of the fund to the adviser-manager; (3) "fall-out" (i.e., indirect)
benefits; (4) the realization of economies of scale in fund operations; (5) comparative fee
structures; and (6) the independence and conscientiousness of the directors/trustees governing
the fund.  <u>See</u> <u>Amron v. Morgan Stanley Inv. Advisors Inc.</u>, 464 F.3d 338, 340 (2d Cir. 2006)
(citing <u>Krinsk v. Fund Asset Mgmt., Inc.</u>, 875 F.2d 404, 409 (2d Cir. 1989)).

Court finds that the [unaffiliated Trustees] were qualified, fully informed, and extremely

conscientious individuals, the [Trustees'] approval of the fee should be weighted heavily.")

(quoting Schuyt v. Rowe Price Prime Reserve Fund, Inc., 663 F. Supp. 962, 988 (S.D.N.Y.

1987), aff'd, 835 F.2d 45 (2d Cir. 1987) (per curiam)), aff'd, 875 F.2d at 412.

Most recently, on May 19, 2008, the United States Court of Appeals for the

Seventh Circuit issued a landmark decision interpreting Section 36(b) of the ICA, which took a

different view of the process by which courts should determine whether a plaintiff has met the

burden of alleging a violation of Section 36(b), Jones v. Harris Associates, L.P., 527 F.3d 627

(7th Cir. 2008).  According to Jones, under Section 36(b), a plaintiff must show that a mutual

fund investment adviser has breached its "fiduciary" duty of candor and deceived the fund's

independent trustees and shareholders concerning the fees being charged to the fund for advisory

services.  Id. at 632.  "[A]dherence to statutory procedures, rather than the level of [fees], is the

right way to understand the 'fiduciary' obligation created by § 36(b)."  Id. (citing Green v. Fund

Asset Mgmt., L.P., 286 F.3d 682 (3d Cir. 2002)).  "A fiduciary must make full disclosure and

play no tricks but is not subject to a cap on compensation."  Id.  "The trustees (and in the end

investors, who vote with their feet and dollars), rather than a judge or jury, determine how much

advisory services are worth."  Id.

Under Jones, "[i]t is possible to imagine compensation so unusual that a court will

infer that deceit must have occurred . . . ."  Id.  For example, "if a university's board of trustees

decides to pay the president $50 million a year, when no other president of a comparable

institution receives more than $2 million" (twenty-five times the norm), there could be a question

about whether deceit had occurred in connection with the approval of the compensation.  Id.  But

absent concrete allegations of misrepresentations and omissions by the adviser in connection

with the approval of fees by the independent directors/trustees, <u>Jones</u> suggests that no court should "inquire whether a salary normal among similar institutions is excessive." <u>Id.</u> (finding that it was unnecessary for a court to inquire into an adviser's costs and profits or other "factors" typically considered in past cases under <u>Gartenberg</u>, so long as the adviser deals candidly with the independent trustees/directors of the fund).

While <u>Jones</u>' approach to the process to be followed in determining whether a breach of fiduciary duty has occurred departs from the methodology laid out in <u>Gartenberg</u> (in significant part because of what twenty-seven years of post-<u>Gartenberg</u> history have taught us), it is consistent with the plain language of Section 36(b), traditional principles of fiduciary law, and the comprehensive regulatory framework of the ICA.  Ultimately, <u>Jones</u> simply addresses what a plaintiff must show in order to establish a breach of fiduciary duty under Section 36(b).  Under <u>Jones</u>, a plaintiff must allege and adduce facts that show that the adviser did not deal candidly with the independent trustees/directors of a mutual fund in connection with the approval of its advisory fee.  Absent concrete factual allegations that the mutual fund investment adviser has breached its "fiduciary" duty of candor and deceived the fund's independent trustees and shareholders concerning the fees being charged to the fund for advisory services, no plaintiff can meet the huge hurdle created by Section 36(b) unless the fee is so extreme and unusual that a court could infer that deceit must have occurred (the "<u>Jones</u> process").  <u>Id.</u>

In this case, Plaintiffs' CAC must be dismissed.  Plaintiffs have failed to allege any concrete facts that suggest that Federated breached its duty of candor or played any "tricks" on the independent trustees.  While Plaintiffs' complain that FKF's advisory fee is high, they do not allege facts that suggest that the fee is so extreme, as described in <u>Jones</u>, that it could only have been the product of deceitful conduct by Federated.  Thus, there is no need for this Court to

look further at Plaintiffs' allegations of comparative fees, profits or other so-called <u>Gartenberg</u>

factors; but were it to do so, Plaintiffs' Section 36(b) claim must be dismissed because Plaintiffs

have failed to allege any concrete facts about the "nature and quality of the services provided to

FKF" that would establish that Federated's advisory fee is "so disproportionately large that it

bears no reasonable relationship to the services rendered and could not have been the product of

arm's-length bargaining." <u>Gartenberg</u>, 694 F.2d at 928.  Indeed, the CAC and the public record

concerning FKF suggest that FKF has received unique, high quality services from Federated and

outperformed allegedly comparable funds, <u>net</u> of the challenged fees.

## <u>ARGUMENT</u>

I.   **Plaintiffs Must Allege Concrete Facts That Suggest That Federated Has Breached Its Fiduciary Duty Under Section 36(b).**

A.   **Plaintiffs' Section 36(b) Claim Must Be Supported By Concrete Factual Allegations That Raise Their Right To Relief Above The "Speculative" Level.**

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)") challenge the legal sufficiency of the complaint.  <u>See</u> <u>Kost v. Kozakiewicz</u>, 1 F.3d

176, 183 (3d Cir. 1993).  To survive a Rule 12(b)(6) motion, "[t]he pleading must contain

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007)

(conclusory allegations of a required "agreement" without any concrete, factual support were

insufficient to state a claim under the Sherman Act) (citation omitted).  The plaintiff's "[f]actual

allegations must be enough to raise a right to relief above the speculative level." <u>Phillips v.</u>

<u>County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Twombly</u>, 127 S. Ct. at 1965 &

n.3).  "The need at the pleading stage for allegations plausibly suggesting (not merely consistent

with) [a violation] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement'

possess enough heft to 'sho[w] the pleader is entitled to relief.'" <u>Twombly</u>, 127 S. Ct. at 1966.

- 6 -

Stated differently, a complaint must contain "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips, 515 F.3d at 234-35; see also Twombly, 127 S. Ct. at 1966 (to survive a motion to dismiss, a complaint must allege enough factual enhancement to cross "the line between possibility and plausibility of 'entitle[ment] to relief'") (citation omitted).

> **B.     A Section 36(b) Claim Must Be Supported By Concrete Factual Allegations That Suggest That A Mutual Fund Investment Adviser Failed To Act With Candor And Deceived The Fund's Independent Trustees In Connection With The Trustees' Approval Of The Adviser's Annual Contract And Fees.**

Section 36(b) provides that:

> [T]he investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.

15 U.S.C. § 80a-35(b).  Section 36(b) also provides a private cause of action to a mutual fund investor, against the fund's investment adviser, "for breach of fiduciary duty in respect of such compensation" paid to the investment adviser by a fund. Id.

Section 36(b) is part of the regulatory framework established by the ICA, which, among other things, "regulates most transactions between investment companies and their advisers; limits the number of persons affiliated with the adviser who may serve on the fund's board of directors; and requires that fees for investment advice and other services be governed by a written contract approved both by the directors and the shareholders of the fund [including a majority of the disinterested or 'independent' directors]." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 536-37 (U.S. 1984) (internal citations omitted).  And because it is only one element of the ICA's complex and comprehensive framework, Section 36(b) should be construed narrowly in the context of the overall regulatory scheme.  See Green, 286 F.3d at 685.

It is well-settled that Section 36(b) establishes a federal "fiduciary" duty that "is significantly more circumscribed than common law fiduciary duty doctrines . . . ."  Id.  The narrowness of Section 36(b) is apparent from the plain language of the statute, which expressly provides for a "fiduciary duty" only "with respect to the receipt of compensation for services, or of payments of a material nature," and which further limits any cause of action under Section 36(b) to an action by a shareholder "on behalf of" a mutual fund for actual damages in the one-year period preceding the filing of the action.  15 U.S.C. § 80a-35(b), (b)(3).  Moreover, Section 36(b) places the burden of proof on the plaintiff, in contrast with the common law rule that requires a fiduciary to justify its conduct.  15 U.S.C. § 80a-35(b)(1); Green, 286 F.3d at 685.  And, to ensure that courts are mindful of the important statutory role played by mutual fund trustees in approving fees, as well as the role played by shareholders, Section 36(b) expressly directs courts to consider trustee and shareholder approval of fees and give their approval such weight as is "appropriate under all the circumstances."  15 U.S.C. § 80a-35(b)(2).  In this regard, courts have found it significant that Congress considered and rejected a proposed version of Section 36(b) that would have required that an adviser's compensation be subject to judicial review for "reasonableness."  Daily Income, 464 U.S. at 538.  Instead, Congress adopted a more narrow legal standard—i.e., a special federal "fiduciary" duty with respect to the receipt of compensation and other payments of a material nature.  See id. at 539.

As noted above, in Gartenberg, the Second Circuit held that, in order to establish a claim under Section 36(b), a plaintiff must show that a mutual fund investment adviser has charged the fund "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  Gartenberg, 694 F.2d at 928.  Courts following the Gartenberg standard have consistently

acknowledged that a plaintiff faces an extremely heavy burden to allege and prove a Section

36(b) claim, and they have given great weight to the business judgment of independent

directors/trustees of a mutual fund, who approve advisory fees annually pursuant to 15 U.S.C.

§ 80a-15(c). See Krinsk, 715 F. Supp. at 502. Indeed, no plaintiff has ever established a

violation of Section 36(b) under the Gartenberg standard.

In Jones—the most recent federal appellate decision to construe Section 36(b)—

the Seventh Circuit carefully examined the text of Section 36(b), traditional principles of

fiduciary law, and the comprehensive regulatory framework of the ICA, and it held that, under

Section 36(b), a plaintiff must show that a mutual fund investment adviser has breached its

"fiduciary" duty of candor and deceived the fund's independent trustees and shareholders

concerning the fees being charged to the fund for advisory services. Jones, 527 F.3d at 632.

Under the process employed by Jones, the adviser's adherence to statutory procedures and the

adviser's candor with mutual fund trustees and shareholders are the touchstones of any Section

36(b) claim concerning mutual fund fees. Drawing on prior decisions by the Third and Seventh

Circuits, Jones concluded that Section 36(b) requires a judicial inquiry into the conduct of the

adviser in dealing with mutual fund trustees and shareholders concerning the adviser's fees. Id.

(citing Green, 286 F.3d 682).

Jones' construction of Section 36(b)'s fiduciary duty is based primarily on the

plain language of the statute and traditional principles of fiduciary law. It also includes a

realistic assessment of the role of mutual fund trustees in approving the fees charged by a fund's

investment adviser and the role of individual shareholders who invest their money in a mutual

fund. See 15 U.S.C. § 80a-35(b)(2) (directing that courts give board and shareholder action such

consideration as appropriate "under all the circumstances"). Jones recognizes, as stated in Burks

v. Lasker, 441 U.S. 471, 485 (1979), that when Congress enacted the ICA, it gave the trustees of

mutual funds "primary responsibility for looking after the interests of the funds' shareholders."

See Jones, 527 F.3d at 632.  In particular, the ICA requires that a mutual fund be governed by a

board of trustees (or directors) that includes individuals who have no interest in the fund's

investment adviser or the adviser's affiliates.[4]   Furthermore, the ICA requires that a mutual

fund's contract for investment advisory services be reviewed and approved annually by a

majority of the fund's trustees, including a majority of the fund's independent trustees.  See 15

U.S.C. § 80a-15(c).  Given these statutory safeguards (and others included in the ICA), courts

construing Section 36(b) consistently have refused "to substitute [the court's] business judgment

for that of the mutual fund's board in the area of management fees."  Kalish v. Franklin

Advisers, Inc., 742 F. Supp. 1222, 1226 (S.D.N.Y. 1990), aff'd, 928 F.2d 590 (2d Cir. 1991) (per

curiam) (citation omitted).  That is why, under Gartenberg and its progeny, great weight is

accorded to approval of the fee by a facially competent board of trustees/directors, and why

Jones deems it essentially dispositive in the absence of deceit by the adviser in connection with

the fee approval process.[5]

Jones also recognized that robust competition and broad shareholder choice in the

modern mutual fund industry provide an important "check" on an investment adviser's ability to

charge an excessive fee that is superior to any judicial second-guessing.

> Competitive processes are imperfect but remain superior to a "just
> price" system administered by the judiciary.  However weak
> competition may be at weeding out errors, the judicial process is

---

[4]    See 15 U.S.C. §§ 80a-10(a) (requiring at least forty percent of an investment company's
directors or trustees be disinterested in the company and its investment adviser and the adviser's
affiliates) and 80a-2(a)(9) and (19) (statutory definitions of "control" and "interested person").

[5]    Plaintiffs admit that FKF's board is comprised of fourteen trustees, eleven of whom are
"independent."  CAC ¶¶ 66, 69.

> worse—for judges can't be turned out of office or have their
> salaries cut if they display poor business judgment.

Jones, 527 F.3d at 633.  Jones noted the dramatically enhanced competition and shareholder

choice in the industry since the enactment of Section 36(b) in 1970:

> A lot has happened in the last 38 years.
>
> Today, thousands of mutual funds compete . . . .  Mutual funds
> rarely fire their investment advisers, but investors can and do "fire"
> advisers cheaply and easily by moving their money elsewhere.
> Investors do this not when the advisers' fees are "too high" in the
> abstract, but when they are excessive in relation to the results—and
> what is "excessive" depends on the results available from other
> investment vehicles, rather than any absolute level of
> compensation.

Jones, 527 F.3d at 633-34 (noting that new entry is common and that funds and advisers can

attract and retain investors only by offering services that investors value at prices they are willing

to pay).  As Jones explained:  "[T]rustees (and in the end investors, who vote with their feet and

dollars), rather than a judge or jury, determine how much advisory services are worth."  Id. at

632, 635 (defendant did not "pull[] the wool over the eyes of the disinterested trustees" during

the fee approval process).

        Jones does not prohibit a mutual fund shareholder from bringing a cause of action

under Section 36(b) for "excessive" advisory fees.  To the contrary, it expressly recognizes that a

Section 36(b) action may be based upon allegations of "excessive" advisory fees.  Id. at 632.

Jones recognizes, however, that candor is the touchstone of the fiduciary duty created by Section

36(b) and that an allegedly "excessive" fee can support a Section 36(b) claim only when the fee

is so extraordinary that the amount of the fee suggests that the adviser must have deceived the

trustees of the fund in connection with the fee approval process.  Under Jones (as under

Gartenberg), "[i]t is possible to imagine compensation so unusual that a court will infer that

deceit must have occurred . . . ."  Id.  But absent concrete allegations of misrepresentations and

omissions by the adviser in connection with the approval of fees by the independent directors/trustees, Jones suggests that no court should "inquire whether a salary normal among similar institutions is excessive."  Id.

Although the Jones court disagreed with Gartenberg as to the process to be followed in determining whether Section 36(b) has been violated (and eschewed the six Gartenberg factors), Jones need not be read as a repudiation of the Gartenberg standard, which holds that fees are not excessive under Section 36(b) unless the fees are so disproportionately large that they bear no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.  Jones simply addresses what a plaintiff must show in order to establish a breach of fiduciary duty under Section 36(b).  Under Jones, a plaintiff must allege and adduce facts that show that the adviser did not deal candidly with the independent trustees/directors of a mutual fund in connection with the approval of its advisory fees.  Absent concrete facts suggesting that the adviser failed to deal candidly with the fund's independent trustees/directors, there must be concrete facts suggesting that the adviser's compensation is so far beyond the pale that it could only have been the product of deceitful conduct by the adviser. Without such allegations, no complaint can meet the huge hurdle created by Gartenberg.[6]

Application of the Gartenberg process, on the other hand, would require a departure from the plain language of Section 36(b) and traditional principles of fiduciary law.

---

[6]     Although the United States Court of Appeals for the Third Circuit has never announced a definitive standard for analyzing a Section 36(b) claim, it has construed Section 36(b) narrowly in past cases.  See Jones, 527 F.3d at 632 (citing Green, 286 F.3d 682); see also Krantz v. Prudential Inv. Fund Mgmt. LLC, 305 F.3d 140, 143 (3d Cir. 2002) (summarily affirming a motion to dismiss, per curiam, and relying on the rationale of cases adopting the Gartenberg standard, but not delving into the six Gartenberg factors).  The Third Circuit's most detailed treatment of a Section 36(b) case to date is Green, and that case, like Jones, focused on the conduct of the adviser and the adviser's adherence to statutory procedures rather than the level or amount of the fee received by the adviser.  Green, 286 F.3d at 685-86.

Under this approach, the Court will have to consider whether Plaintiffs' CAC alleges sufficient concrete facts about Federated's advisory fee and services to suggest that Federated's fees are so disproportionately large that they bear no reasonable relationship to the services rendered, and the Court will have to expend considerable time and energy sifting through numerous bald and conclusory allegations included in Plaintiffs' prolix CAC.  Although the <u>Gartenberg</u> process (like the <u>Jones</u> process) imposes an extremely heavy burden on a plaintiff seeking to bring a Section 36(b) claim against a mutual fund investment adviser, it also typically requires pleading and proof concerning a host of complicated issues, including (without limitation):  profitability, economies of scale, comparisons of fees charged to other comparable mutual funds, an evaluation of fund governance by the independent trustees who oversee the funds, and other possible issues relating to fund operations.  This unavoidably places the Court in the position of being a "fee setting body" or "rate regulator," which is contrary to the intended role of the judiciary under the statute.  There is no reason for this Court to proceed down such a complicated and twisted legal path.  This Court should apply the <u>Jones</u> process when analyzing Plaintiffs' Section 36(b) claim.  <u>Cf.</u> <u>Krantz</u>, 305 F.3d at 143 (discussing proportionality of fees to services but not applying the <u>Gartenberg</u> process).

## II.    Plaintiffs' Consolidated Amended Complaint Should Be Dismissed Under <u>Jones</u>.

Under <u>Jones</u> and controlling case law concerning Rule 12(b)(6), Plaintiffs may not rest their claim on bald and conclusory factual allegations.  To the contrary, Plaintiffs must (1) allege concrete facts that raise their claim for relief above the level of speculation and possibility and (2) suggest that Federated did not act candidly in connection with the renewal of its annual advisory contract or that FKF's advisory fee is so extreme and unusual that it could only have been the product of deceitful conduct by Federated.  <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1974

(a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face");

Phillips, 515 F.3d at 234 ("Factual allegations must be enough to raise a right to relief above the

speculative level.") (citation omitted).

       The CAC is devoid of concrete factual allegations that would raise Plaintiffs'

right to relief under Section 36(b) above the speculative level.[7]  Plaintiffs' allegations regarding

Federated's dealings with the independent trustees who oversee FKF are bald and conclusory in

nature.  CAC ¶ 5 ("[T]he stated investment advisory fee charged to the Federated Kaufmann

Fund . . . [is] unreasonable, excessive, and/or disproportionate to the services provided . . . as

demonstrated by:  . . . (2) the failure of Federated to provide the Federated Kaufmann Fund

Trustees with all information reasonably necessary to evaluate the terms of the advisory

agreements with respect to each of the funds . . . ."); ¶ 76 ("In contravention of their duty to

provide to the Board all information necessary to evaluate terms of the management contracts the

Federated Defendants did not furnish such necessary information to the Board for purposes of its

review of the Fund's investment advisory agreements.").[8]  Plaintiffs not only fail to allege that

---

[7]     Indeed, a good portion of the CAC is premised on blatant speculation.  See CAC ¶ 49
("[a] single, stand-alone mutual fund . . . may need to charge a higher investment advisory
fee . . . ") (emphasis added); ¶ 59 ("[t]he securities transferred . . . to the Federated Kaufmann
Fund had lesser average unrealized appreciation . . . , thus potentially diluting the investment
performance . . .") (emphasis added); ¶ 63 ("[b]ecause these mergers forced the Federated
Kaufmann Fund to absorb portfolios of securities that may not have fit in its investment
objectives and philosophy . . .") (emphasis added); ¶ 72 ("the overhead coverage and perhaps
even the profitability of one or even many mutual funds may be attributed to another fund or
funds . . .") (emphasis added); ¶ 73 ("the overall cost structure and profitability of many funds
are considered in the aggregate and may take precedence over a specific consideration . . .")
(emphasis added); ¶ 75 ("in the absence of a fund specific analysis, . . . profitability can be
overlooked or masked in the aggregate analysis . . . .  [i]n that type of analysis, total revenues . . .
may be viewed by the Federated Defendants . . .") (emphasis added).

[8]     Plaintiffs include allegations related to the reorganization of the Kaufmann Fund into
FKF and the potential negative effects of mergers of other Federated funds into FKF.  CAC ¶¶
47-63.  These allegations are legally insufficient in part because the reorganization and some of
Continued on following page

Federated breached its duty of candor and deceived FKF's independent trustees and shareholders, but such generic assertions are precisely the kind of allegations recently rejected by the United States Supreme Court as insufficient to survive a Rule 12(b)(6) motion.  See Twombly, 127 S. Ct. at 1965 (allegations of a required "agreement" without any factual support were insufficient to state a claim under the Sherman Act).  They simply provide no facts to demonstrate that Federated was not candid with the board.

Plaintiffs' allegations are all the more inadequate because Plaintiffs already have received substantial discovery from Federated, consisting of the board materials presented to FKF's trustees by Federated, which contain the materials referencing FKF that are applicable to the initial adoption and annual renewals of the investment advisory agreement with FKF.  See CAC ¶ 6.  Even after reviewing the materials presented by Federated to FKF's trustees, Plaintiffs are unable to allege any facts to raise their right to relief above the speculative level or point to any instance when Federated failed to fulfill its fiduciary obligations under Jones.[9]  See Twombly, 127 S. Ct. at 1966 ("when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court'") (citations omitted);

---

Continued from previous page
the mergers took place before any relevant time period at issue in this litigation.  With respect to the mergers that occurred during the relevant time period, Plaintiffs have failed to allege sufficient facts as to why each merger constitutes a violation of Section 36(b).  Finally, courts have held that fund mergers are not actionable under Section 36(b).  Olesh v. Dreyfus Corp., No. CV-94-1664, 1995 WL 500491, at *19 (E.D.N.Y. Aug. 8, 1995) ("[B]y negotiating 'a merger which enhances only its own interests, at the expense of the Dreyfus Funds and their stockholders' [the investment adviser] does not violate § 36(b) where the alleged 'expense' is only exposure 'to the additional risks and costs that the merger entails for them' . . . ").

[9]      Indeed, many of Plaintiffs' allegations confirm that Federated gave FKF's trustees information and that Plaintiffs merely disagree with the way that the trustees used that information during the fee approval process.  CAC ¶¶ 72-74, 94, 106.

Phillips, 515 F.3d at 234-35 (a complaint must contain "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation").

Additionally, although Plaintiffs allege that FKF's advisory fee is high, they fail to allege that the fee is so extreme and unusual that it could only have been the product of deceitful conduct by Federated. See Jones, 527 F.3d at 632 (a fee that is twenty-five times the normal range in the industry could be so far outside the norm that the amount of the fee would raise a question about whether deceit had occurred). In fact, Plaintiffs' own allegations acknowledge that comparable mutual funds charge an advisory fee that is in-line with or higher than FKF's advisory fee. CAC ¶ 95 (a "handful" of purported "mid-growth peers" may bear fees and expenses that are higher than FKF's).

## III.   Plaintiffs' Conclusory Allegations Concerning Comparative Fees, Profits, and Other So-Called Gartenberg Factors Do Not Save Their Section 36(b) Claim.

Even if the Court chooses to apply the Gartenberg process, Plaintiffs' Section 36(b) claim must be dismissed because Plaintiffs have failed to allege sufficient, concrete facts indicating that FKF's advisory fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Gartenberg, 694 F.2d at 928.

### A.  Plaintiffs' Comparative Fees Allegations

Plaintiffs' primary allegation is that Federated charges Federated Equity Funds[10] and other clients lower fees than FKF shareholders for asserted "identical" services. CAC ¶¶ 77-81, 83-84, 87, 92-93. Plaintiffs also contend that FKF's advisory fee is excessive when

---

[10]     Federated Equity Funds is a Massachusetts business trust that includes FKF and eight other mutual funds.

compared to the advisory fees of other (unspecified), non-affiliated mutual funds.  CAC ¶ 95.

These allegations are defective for many reasons.

Most fundamentally, Plaintiffs fail to include any concrete factual allegations

regarding the services Federated provides to its different clients, much less provide a basis for

concluding that the services provided by Federated to FKF shareholders are the "same" or

"identical" to the services Federated provides to other Federated Equity Funds, or so-called

"institutional" or "sub-advised" clients.  CAC ¶¶ 77-81, 83-84, 87, 92-93.  Conclusory

allegations that the services are the "same" or "identical" do not suffice.  <u>Twombly</u>, 127 S. Ct. at

1965 (allegations of a required "agreement" without any factual support were insufficient to state

a claim under the Sherman Act).

For example, with respect to the comparison between the fees charged to FKF and

the other Federated Equity Funds, the CAC contains no factual allegations describing:

- the Federated personnel involved in managing the portfolios of FKF and other Federated Equity Funds;
- the investment strategies and methods used by Federated to select securities for FKF and other Federated Equity Funds;
- the nature, quality, and extent of research and analysis performed by Federated for FKF and other Federated Equity Funds;
- the portfolio securities trading operations conducted by Federated for FKF and other Federated Equity Funds; and/or
- any ancillary services provided by Federated.[11]

---

[11]    Indeed, CAC ¶ 84 belies Plaintiffs' bald assertions by acknowledging that FKF and certain other Federated Equity Funds may have separate investment objectives, strategies, and portfolio managers and that advisory services for these funds may be provided by different personnel working from different locations.  Moreover, Federated's public filings, referenced repeatedly in the CAC establish that most other Federated Equity Funds do not employ an "identical" portfolio management strategy to the investment approach developed by the team that has managed FKF for over twenty years.  <u>Compare, e.g.</u>, FKF, Prospectus Class A, B, and C Shares, p. 9 (Dec. 31, 2007) (attached hereto as Exhibit 2) ("There is an emphasis on individual stock selection rather than trying to time the highs and lows of the market or concentrating in certain industries or sectors.  This hands-on approach means that in addition to sophisticated computer analysis, [Federated] may conduct in-depth meetings with management, industry analysts and consultants.  Through this interaction with companies, [Federated] seeks to develop

Continued on following page

Similarly, there are no allegations whatsoever describing the nature and extent of the advisory services provided to FKF on the one hand, and on the other hand to so-called "institutional" and "sub-advised" clients, and there are no allegations explaining why Federated's services for these different clients are the "same."  Furthermore, the validity of comparing the fees charged to so-called "institutional" and "sub-advised" clients has been rejected by a body of case law, which holds that mutual fund advisory services and fees are <u>not</u> comparable to those for so-called "institutional" and "sub-advised" clients.  <u>See</u> <u>Jones</u>, 527 F.3d at 634 ("Harris Associates charges a lower percentage of assets to other clients, but this does not imply that it must be charging too much to the Oakmark funds.  Different clients call for different commitments of time.  Pension funds have low (and predictable) turnover of assets.  Mutual funds may grow or shrink quickly and must hold some assets in high-liquidity instruments to facilitate redemptions.  That complicates an adviser's task."); <u>See, e.g.</u>, <u>Gartenberg</u>, 694 F.2d at 930 n.3; <u>Schuyt</u>, 663 F. Supp. at 974 n.38; <u>Strougo v. BEA Assocs.</u>, 188 F. Supp. 2d 373, 384 (S.D.N.Y. 2002); <u>see also</u> <u>Baker v. Am. Century Inv. Mgmt.</u>, No. 2:04cv4039 slip op. (W.D. Mo. July 18, 2006); <u>Bromson v. Lehman Mgmt. Co.</u>, No. 84 Civ. 7795, 1986 WL 165, at *2 (S.D.N.Y. Mar. 13, 1986); <u>Batra v. Investors Research Corp.</u>, 144 F.R.D. 97, 99 (W.D. Mo. 1992); <u>Kalish</u>, 742 F. Supp. at 1237.

---

Continued from previous page
a thorough knowledge of the dynamics of the business in which the Fund invests.") <u>with</u> Federated Mid Cap Growth Strategies Fund, Prospectus Class A, B, and C, Shares, p. 8 (Dec. 31, 2007) (attached hereto as Exhibit 3) ("Using its own quantitative process, the Fund's investment adviser (Adviser) rates the future performance potential of companies.  The Adviser evaluates each company's earnings quality in light of its current valuation to narrow the list of attractive companies.  The Adviser then evaluates product positioning, management quality and sustainability of current growth trends of those companies.").  The only two other funds that employ FKF's unique approach to portfolio management are managed by the same portfolio managers and bear the same gross advisory fee as FKF.  <u>See</u> Federated Kaufmann Large Cap Fund, Prospectus Class A and C Shares, p. 6 (Dec. 3, 2007 (Revised January 3, 2008)) (attached hereto as Exhibit 4); Federated Kaufmann Small Cap Fund, Prospectus Class A, B, and C Shares, p. 9 (Dec. 31, 2007) (attached hereto as Exhibit 5).

Plaintiffs' comparison of the fees charged by Federated to FKF with the fees charged to so-called "institutional" or "sub-advised" clients is also flawed because Plaintiffs do not identify a relevant time period.  Section 36(b) states that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted."  15 U.S.C. § 80a-35(b)(3).  Section 36(b) case law is clear that a plaintiff must plead sufficient factual allegations within the applicable one-year look back period in order to state a claim.  See Boyce v. AIM Mgmt. Group, Inc., No. 4:04cv02587, slip op. at 13 (S.D. Tex. Sept. 17, 2007) (granting motion to dismiss a Section 36(b) claim because the filing of the claim derivatively created a new one-year look back period within which the plaintiffs did not plead any facts); In re Franklin Mut. Funds Fee Litig., 478 F. Supp. 2d 677, 686-88 (D.N.J. 2007) (granting motion to dismiss Section 36(b) claim with respect to two funds because allegations of the funds' resemblance to index funds and underperformance were insufficient allegations within the relevant one-year look back period to state a claim); In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 1:04cv4885, 2006 WL 74439, at *2-3 (S.D.N.Y. Jan. 11, 2006) (granting motion to dismiss Section 36(b) claim because allegations of the failure to share economies of scale covered only four months of the relevant one-year look back period and allegations that the investment adviser improperly controlled some of the funds' directors failed to rebut the ICA statutory presumption of director independence).  Because Plaintiffs do not place a time period on the sub-advisory fees cited in the CAC, this Court should disregard the allegation.  See In re Franklin, 478 F. Supp. 2d at 687 (granting motion to dismiss Section 36(b) claim and holding that "[t]he data relied upon in making this claim is undated, and therefore the Court cannot know whether it pertains to the Funds' fees during the relevant one-year period").

But even if such comparisons were otherwise appropriate, they are insufficient to state a Section 36(b) claim here because they fail to establish that the fees charged to FKF are excessive in relation to the services rendered and could not have been the product of arm's-length bargaining.  See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006); In re Salomon Smith Barney Mut. Fund Fee Litig., 528 F. Supp. 2d 332, 336-37 (S.D.N.Y. Dec. 3, 2007).  At best, Plaintiffs' conclusory allegations suggest that Federated charges different rates and fees to manage the assets of different mutual funds and other clients with different investment objectives, different investment strategies, different portfolio managers, and other characteristics.  There is nothing improper or unlawful about such a practice.  See Jones, 527 F.3d at 634.  In sum, it would be pure speculation to assume, based solely on the CAC's allegations, that FKF's investment advisory fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  Gartenberg, 694 F.2d at 928; see also Twombly, 127 S. Ct. at 1965 (to survive a Rule 12(b)(6) motion, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Plaintiffs further allege that FKF's advisory fee is "excessive" when compared to the "average advisory fee charged comparable, non-affiliated mutual funds."  CAC ¶ 95 (bolding and italics omitted).  But, this allegation too is unsupported by concrete facts.  For example, no allegations identify which other "non-affiliated" mutual funds are included in the "average," or otherwise support Plaintiffs' bald assertion that these unidentified funds are "comparable" to FKF.  In the end, the CAC merely asserts that Federated charges an investment advisory fee to FKF that is higher than the fee charged by most advisers for managing other purportedly

comparable, non-affiliated mutual funds.  CAC ¶ 95 (a "handful" of purported "mid-growth

peers" may bear fees and expenses that are higher than FKF's).  That does not establish a breach

of fiduciary duty under Section 36(b).[12]  See Amron, 464 F.3d at 345 (affirming the dismissal of

a Section 36(b) complaint where plaintiffs alleged that a fund's expense ratio was higher than the

industry mean); In re Salomon, 528 F. Supp. 2d at 339 (dismissing a Section 36(b) complaint

where plaintiffs alleged that the fund's expense ratio was high when compared to the value

weighted average of funds with similar investment objectives).  Even assuming that FKF's

advisory fee is higher than that of allegedly comparable mutual funds, it would be pure

speculation for the Court to assume that FKF's advisory fee is so excessive in relation to the

services rendered that a violation of Section 36(b) has occurred.  See In re Goldman Sachs Mut.

Funds Fee Litig., No. 1:04cv2567, 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006) (dismissing

a Section 36(b) complaint where plaintiffs did not include factual allegations to support their

assertion that the advisory fee was too high).

### B.  Plaintiffs' Profitability and Economies of Scale Allegations

Plaintiffs allege that Federated earns more in profits from managing FKF than

from managing any other Federated fund.  CAC ¶¶ 117-119; see also CAC ¶ 86 (according to its

2007 annual report FKF paid more advisory fees than the five other funds contained in the

Federated Equity Funds Series combined).  Plaintiffs further allege without identifying any

supporting facts that Federated has achieved substantial economies of scale in mutual fund

operations that render FKF's advisory fee excessive and has failed to pass the benefits of any

supposed economies of scale along to FKF's shareholders.  CAC ¶¶ 74, 98-110.  Plaintiffs'

---

[12]      This allegation is also flawed because Plaintiffs do not identify a relevant time period.
See supra p. 19.

allegations related to profitability and economies of scale are insufficient to state a Section 36(b)

claim under Gartenberg because they are not supported by sufficient, concrete allegations.

The CAC's allegations concerning Federated's profits are unsupported by

concrete factual allegations purporting to quantify the costs incurred by the adviser.  See Amron,

464 F.3d at 344-45 (affirming the dismissal of a Section 36(b) complaint where plaintiffs made

conclusory allegations about profitability without alleging facts about both fees and

corresponding costs); In re Salomon, 528 F. Supp. 2d at 338 (same).  Since profits are

determined by subtracting costs from revenues, the absence of allegations concerning costs

requires disregarding Plaintiffs' assertions about profits under Twombly.[13]

Plaintiffs' economies of scale allegations similarly fail.  In theory, economies of

scale may occur when costs decrease on a per-unit basis as a mutual fund increases in size.  See

Kalish, 742 F. Supp. at 1238, aff'd, 928 F.2d at 591.  Plaintiffs conclusorily allege that FKF

"generates large economies of scale."  CAC ¶ 103.  However, in order to successfully allege that

an investment adviser has realized and failed to share economies of scale, courts have

consistently held that a plaintiff must include allegations related to the costs of managing the

---

[13]     Even if Plaintiffs could allege sufficient, concrete facts about Federated's fees and costs, the CAC would still fail to state a claim.  It is beyond question that the adviser is entitled to earn a profit from its relationship with a fund and that Section 36(b) does not allow for judicial regulation of an adviser's rates and profits.  Kalish, 742 F. Supp. at 1237 (a plaintiff may not claim that an adviser "just plain made too much money"), aff'd, 928 F.2d at 591; Krinsk, 715 F. Supp. at 485, aff'd, 875 F.2d at 410 (holding that high profitability alone does not support a finding that the advisory fee is excessive); Schuyt 663 F. Supp. at 972, aff'd, 835 F.2d 45.

Moreover, courts that have considered profitability have concluded that pre-tax profit margins of over 75% are not excessive.  Meyer v. Oppenheimer Mgmt. Corp., 707 F. Supp. 1394, 1401 & 1406 (S.D.N.Y. 1988) (pre-tax advisory fee margins of 85%, 89%, and 89% acceptable), 715 F. Supp. 577 (S.D.N.Y. 1989) (pre-tax, aggregated advisory and 12b-1 fee margins of 11.6%, 19%, 21.4%, and 23.2% do not violate Section 36(b)), aff'd, 895 F. 2d 861 (2d Cir. 1990); Schuyt, 663 F. Supp. at 977-79 (pre-tax profit margins of 66.8%, 59.1%, and 77.3% do not violate Section 36(b)).

fund, which Plaintiffs have failed to do.[14]  In re Salomon, 527 F. Supp. 2d at 339 (granting

motion to dismiss and stating that "[e]conomies of scale allegations are insufficient when there

are no allegations of the costs"); In re Scudder, No. 1:04cv1921, 2007 WL 2325862, at *16

(S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss and stating that "[m]ere assertions that

fees increased with the size of the Funds are not enough to establish that the benefits from

economies of scale were not passed on to investors"); In re Goldman Sachs Mut. Funds Fee

Litig., 2006 WL 126772, at *9; see also Kalish, 742 F. Supp. at 1238 (Stating, after bench trial,

that "Plaintiffs in prior cases have argued in substance that since a fund increased dramatically in

size, economies of scale must have been realized.  The courts reject that argument."), aff'd, 928

F.2d at 591; Krinsk, 715 F. Supp. at 496 (stating, after bench trial, that "merely because the ratio

of fee based expenses to fee based revenues declined at a time when the Fund size grew, that fact

does not establish that such a decline was necessarily due to economies of scale"), aff'd, 875

F.2d at 411.[15]

---

[14]     Notwithstanding Plaintiffs' failure to allege the existence of economies of scale, Plaintiffs
baldly assume that economies of scale can only be shared through the insertion of breakpoints
into a fund's fee schedule.  CAC ¶¶ 109-110.  However, economies of scale can be passed onto a
fund's shareholders by several methods.  See In re Franklin, 478 F. Supp. 2d at 681 (plaintiffs'
counsel in this case alleged that adviser did not pass on economies of scale by either lowering fee
or providing additional services).

[15]     To support their assertions Plaintiffs misread FKF's 2005 annual report which merely
states the conditions under which economies of scale might be realized.  It does not establish, as
Plaintiffs allege, that economies of scale were realized by FKF.  See CAC ¶ 74 ("Although the
Board is always interested in discovering any genuine 'economies of scale' *its experience has
been that such 'economies' are likely to arise only when a fund grows dramatically, and
becomes and remains very large in size."*) (emphasis in original).  Plaintiffs' allegation is
insufficient under Twombly.  127 S. Ct. at 1966 ("The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with) [a violation] reflects the threshold requirements
of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show the pleader is entitled to
relief.'").  Indeed, the disclosure in the annual report establishes that the board considered
whether FKF generated economies of scale and concluded that the costs and profitability of FKF
were appropriate.

In sum, Plaintiffs' comparative fees, profitability and economies of scale allegations do not contain sufficient, concrete facts to sustain Plaintiffs' Section 36(b) claim.  See Twombly, 127 S. Ct. at 1965 (conclusory allegations of a required "agreement" without any concrete, factual support were insufficient to state a claim under the Sherman Act).

### C.  Plaintiffs' Performance Allegations

Plaintiffs allege that FKF was the best performer out of the eight Federated Equity Funds in only one year between 2001 and 2007, and they assert that FKF's advisory fee, therefore, may not be "justified" based on any "theory" about FKF's performance.  CAC ¶¶ 115-16.  These allegations are defective and insufficient for multiple, independent reasons.  First, under Section 36(b), Federated is not required to "justify" its fees at all.  To the contrary, the statute expressly imposes a burden on Plaintiffs to allege and prove facts which would show that Federated has breached its fiduciary duty.  15 U.S.C. § 80a-35(b)(1).  Plaintiffs' allegations turn the statute on its head.  Second, Plaintiffs' allegations baldly *assume* that it is appropriate to compare the performance of FKF with the performance of other Federated Equity Funds in general or over any particular period of time.  But the CAC contains no factual allegations that would support this comparison.  Third, even though Plaintiffs' comparison of FKF's performance to the performance of other Federated Equity Funds is inappropriate, Plaintiffs' own allegations (CAC ¶ 115) confirm that FKF has outperformed most other mutual funds consistently and dramatically over time by acknowledging that during the period from October 31, 2001 through October 31, 2007, FKF produced the highest average annual return, net of fees, of all Federated Equity Funds (excepting the Federated Kaufmann Small Cap Fund, which did

not exist during the market downturn of 2001-2002, which is managed by the same team that

manages FKF, and which charges a gross investment advisory fee identical to FKF's).[16]

        In any event, FKF's long history of superior performance is well-documented and

cannot be credibly impugned.  Indeed, for each of the 2-, 3-, 5-, 10-, 15-, and 20-year periods

ended October 31, 2007, FKF Class K Shares ranked within the top twenty percent of the Lipper

Mid-Cap Growth Funds category, based on total return.  FKF Class K Shares, Portfolio Manager

Review and Annual Shareholder Report, Portfolio Manager Review (Oct. 31, 2007) (attached

hereto as Exhibit 6).  Perhaps Plaintiffs protest too much.  Combined with their deficient

allegations, a return superior to most comparators chosen by Plaintiffs suggests that FKF's

advisory fee cannot be so disproportionately large that it bears no reasonable relationship to the

services rendered such that it could not have been the product of arm's-length bargaining.[17]

---

[16]    Plaintiffs' CAC also relies heavily on the Stewardship Grade given to FKF by a *Morningstar* analyst.  CAC ¶¶ 111-12.  However, *Morningstar's* report, standing alone and in conjunction with the other facts alleged, does not establish that the fees received were disproportionate to the services rendered.  See Amron, 464 F.3d at 344; In re Salomon, 528 F. Supp. 2d at 337.  The Stewardship Grade rates five categories, none of which is related to the nature of the services provided by the adviser to the fund.  See CAC ¶ 111.  The Stewardship Grade is a subjective assessment that does not take into consideration fund performance.  In fact, Plaintiffs' CAC admits that *Morningstar* Stewardship Grade is "completely unrelated" to the *Morningstar* Star Rating, which measures risk adjusted performance.  See Kalish, 742 F. Supp. at 1229 ("Given investors' primary objective of making money, the most significant indication of the quality of an investment adviser's services is the fund's performance relative to other funds of the same kind.") (citation omitted), aff'd, 928 F.2d at 591.  As established above, the public record clearly establishes that Federated has delivered superior performance to FKF's shareholders.

[17]    Even if it could be shown that other, comparable funds have performed better over time (and Federated submits that it could not be), such allegations concerning performance alone would be insufficient to state a claim under Section 36(b).  See Amron, 464 F.3d at 344 (allegations that fund lost money and performed worse than 80% of S&P fund peers insufficient to state Section 36(b) claim); In re Salomon, 528 F. Supp. 2d at 338 (allegations of underperformance alone insufficient to state Section 36(b) claim).

**D.  Plaintiffs' Disagreements With The Structure Of FKF's Board And The Conclusions Of Its Independent Trustees**

Plaintiffs allege several times in the CAC that FKF's trustees failed to "adequately consider" certain information during the advisory fee approval process.  CAC ¶¶ 96, 110, 113, 119; see also CAC ¶¶ 71-73, 106.  Additionally, Plaintiffs allege that FKF's trustees did not act independently and conscientiously because they oversee too many funds.  CAC ¶¶ 66-70.  These allegations are flawed for at least two reasons.

As established above, Section 36(b) focuses on the conduct of the adviser, not the trustees.  However, even if the court considers Plaintiffs' allegations of the trustees' failure to adequately consider certain information, Plaintiffs still fail to state a Section 36(b) claim.  Like Plaintiffs' comparative fees, profitability, and economies of scale allegations, Plaintiffs' allegations that FKF's trustees did not "adequately consider" certain information are not supported by concrete factual allegations.  See Amron, 464 F.3d at 344-45 (affirming the dismissal of a Section 36(b) complaint where plaintiffs made conclusory allegations about independence and conscientiousness of mutual fund's board of directors); In re Salomon, 528 F. Supp. 2d at 338 (dismissing Section 36(b) claim where plaintiffs conclusorily alleged that mutual funds' board members were not independent and conscientious).  Plaintiffs' own allegations clearly establish that Federated gave FKF's trustees the appropriate information (e.g., CAC ¶¶ 72-74, 94, 106) and that Plaintiffs merely disagree with the trustees' conclusions.  Such allegations do not establish a violation of Section 36(b).  Gallus v. Ameriprise Fin., Inc., 497 F. Supp. 2d 974, 983 (D. Minn. 2007) ("Plaintiffs do not challenge the board members' independence.  Plaintiffs do not dispute that the Board met regularly, played an active role in the [fee approval] process, and sought the advice of independent counsel and consultants. . . .  While the Board may have placed greater emphasis on fees charged to peer mutual funds than Plaintiffs

would have liked, such evidence does not create" a right to relief under Section 36(b)), <u>appeal docketed</u>, No. 07-2945 (8th Cir. Apr. 17, 2008).  Moreover, it would be improper for this Court to second-guess the business judgment of the independent trustees after considering the impeccable qualifications of the independent trustees, <u>see</u> <u>supra</u> p. 3, and Plaintiffs' admission that FKF's board is comprised of the requisite number of independent trustees, <u>see</u> <u>supra</u> n.5. <u>See</u> 15 U.S.C. § 80a-35(b)(2) (directing courts to consider trustee approval of fees and give their approval such weight as is "appropriate under all the circumstances").

Second, numerous courts have held that the mere fact that trustees oversee a large number of funds is insufficient to state a Section 36(b) claim.  <u>Amron</u> 464 F.3d at 345-46; <u>Migdal v. Rowe Price-Fleming Int'l</u>, 248 F.3d 321, 330-31 (4th Cir. 2001); <u>Krantz</u>, 305 F.3d at 143-44; <u>In re Salomon</u>, 528 F. Supp. 2d at 339; <u>Verkouteren v. Blackrock Fin. Mgmt., Inc.</u>, 37 F. Supp. 2d 256, 261 (S.D.N.Y. 1999) (dismissing complaint alleging directors were controlled by the adviser), 1999 WL 511411, at *4 (S.D.N.Y July 20, 1999) (dismissing amended complaint), <u>aff'd</u>, 2000 WL 298255, at *2-3 (2d Cir. Mar. 21, 2000).

In sum, even if this Court chooses to apply the <u>Gartenberg</u> process, Plaintiffs do not come close to alleging facts that would establish that FKF's advisory fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."[18]  <u>Gartenberg</u>, 694 F.2d at 928. Certainly, pursuant to <u>Twombly</u> and <u>Phillips</u>, Plaintiffs make no factual allegations that raise their right to relief under Section 36(b) above the speculative level.  Therefore, their Section 36(b) claim must be dismissed.

---

[18]     Again, Plaintiffs' allegations are all the more inadequate in light of the fact that Plaintiffs' CAC has the further benefit of significant discovery, consisting of the board materials presented to FKF's trustees by Federated.  <u>See</u> <u>supra</u> at pp. 15-16.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' CAC should be dismissed in its entirety.


Dated:  July 11, 2008                              Respectfully Submitted,

                                                   **REED SMITH LLP**


                                                   By:  ___/s/ Perry A. Napolitano_____
                                                           Thomas L. Allen, PA 33243
                                                           Perry A. Napolitano, PA 56789
                                                           Joseph E. Culleiton, PA 82823
                                                           David J. Bird, PA 92424

                                                           435 Sixth Avenue
                                                           Pittsburgh, Pennsylvania 15219
                                                           Telephone: (412) 288-3131
                                                           Facsimile:  (412) 288-3063

                                                   *Attorneys for Defendants Federated Investors, Inc.,*
                                                   *Federated Investment Management Company,*
                                                   *Federated Equity Management Company, and*
                                                   *Federated Global Investment Management Corp.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this Memorandum of Law in Support of Federated

Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint was filed

electronically with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to all counsel of record.

Dated:  July 11, 2008                    Respectfully Submitted,

                                         **REED SMITH LLP**

                                         By: ___/s/ Perry A. Napolitano_____
                                                 Thomas L. Allen, PA 33243
                                                 Perry A. Napolitano, PA 56789
                                                 Joseph E. Culleiton, PA 82823
                                                 David J. Bird, PA 92424

                                                 435 Sixth Avenue
                                                 Pittsburgh, Pennsylvania 15219
                                                 Telephone: (412) 288-3131
                                                 Facsimile:  (412) 288-3063

                                         *Attorneys for Defendants Federated Investors, Inc.,*
                                         *Federated Investment Management Company,*
                                         *Federated Equity Management Company, and*
                                         *Federated Global Investment Management Corp.*