## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re FEDERATED MUTUAL FUNDS EXCESSIVE FEE LITIGATION | Consolidated No. 2-04-cv-352-DSC |

## PLAINTIFFS' PRE-TRIAL BRIEF

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .............................................................................:.........................1

II.     LEGAL FRAMEWORK FOR ANALYZING A CLAIM UNDER SECTION 36(b)
        OF THE INVESTMENT COMPANY ACT OF 1940 .......................................................3

        A.      According To The Supreme Court, "Fiduciary Duty" Under Section 36(b)
                Means There Must Be Both Good Faith In The Negotiation Process And A
                Fair Outcome, Which Are The Earmarks Of An Arm's-Length Bargain...............5

        B.      A Flawed Fee Approval Process Will Result In No Deference To The Board's
                Decision And Rigorous Scrutiny By The Court .......................................................5

        C.      Factors To Consider When Evaluating A Section 36(b) Claim Under The
                *Jones* Standard Of The Arm's Length Bargaining Benchmark ...............................6

III.    DEFENDANTS HAVE BREACHED THEIR FIDUCIARY DUTY UNDER
        SECTION 36(b) BY CHARGING EXCESSIVE ADVISORY FEES TO THE
        KAUFMANN FUND..........................................................................................................7

        A.      The Trustees' Process For Approval Of The Kaufmann Fund's Advisory Fee
                Was Not Robust And Is Therefore Entitled To No Deference By The Court ........8

                1.      Comparative Fee Structures....................................................................10

                2.      The Adviser's Costs In Providing Services And The Profitability Of
                        The Fund To The Adviser........................................................................12

                3.      Economies Of Scale ................................................................................13

                4.      Nature And Quality Of The Adviser's Services .....................................14

        B.      Regardless Of Whether The Advisory Fee Approval Process Was Robust Or
                Not, Defendants Violated Their Fiduciary Duties Under Section 36(B)..............17

                1.      The Federated Kaufmann Fund Pays Significantly Higher Advisory
                        Fees Than Federated's Institutional Accounts And Other Equity Funds
                        Within And Outside Of The Federated Family........................................18

                2.      Federated Has Earned Enormous Profits From Managing The
                        Federated Kaufmann Fund......................................................................19

                3.      Federated Has Not Passed On The Benefits Accruing From The
                        Economies Of Scale Realized As The Federated Kaufmann Fund Has
                        Grown Substantially Over The Past Decade.............................................19

        4.     The Nature And Quality Of The Services Provided By The Fund's
Investment Advisers Do Not Justify The High Fees Paid By The Fund ...20

IV.    THE SUPREME COURT HELD IN *JONES* THAT THE ISSUE OF
COMPETITION IN THE MUTUAL FUND INDUSTRY SHOULD BE LEFT FOR
CONGRESS TO RESOLVE ............................................................................................22

V.     REMEDIES FOR DEFENDANTS' BREACHES OF FIDUCIARY DUTY ...................23

VI.    CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Dentler Family Trust,*
    873 A.2d 738 (Pa. Super. Ct. 2005) ...................................................................................24

*In re Federated Mutual Funds Excessive Fee Litig.,*
    04-352, 2009 U.S. Dist. LEXIS 125258 (W.D. Pa. Sept. 30, 2009) ...........................................4

*In re Gartenberg,*
    636 F.2d 16 (2d Cir. 1980) ...................................................................................................23

*Gartenberg v. Merrill Lynch Asset Management, Inc.,*
    694 F.2d 923 (2d Cir. 1982) ..............................................................................................3, 7

*Jones v. Harris Associates L.P.,*
    130 S. Ct. 1418 (2010) .................................................................................................. *passim*

*Jones v. Harris Assocs., L.P.,*
    527 F.3d 627 (7th Cir. 2008) ...........................................................................................4, 25

*Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz,*
    602 A.2d 1277 (Pa. 1991) ...................................................................................................23

*Pepper v. Litton,*
    308 U.S. 295 (1939) ..............................................................................................................5

*Sack v. Feinman,*
    413 A.2d 1059 (1980) ...........................................................................................................23

STATUTES

15 U.S.C. § 80a-15(a) ..............................................................................................................9

15 U.S.C. § 80a-15(c) ..............................................................................................................1

15 U.S.C. § 80a-35(b) .................................................................................................1, 3, 5, 23

15 U.S.C. § 80a-46(b) .............................................................................................................23

OTHER AUTHORITIES

Investment Company Act Amendments of 1970
    S. Rep. No. 91-184, reprinted in 1970 U.S.C.C.A.N. 4897 .......................................................3

Restatement (First) of Restitution § 190 (1937) ............................................................................23

## I.    INTRODUCTION

Plaintiffs Gretchen Reaves, Nina Monahan, Mary Ann Abendroth, and Lawrence Zucker ("Plaintiffs") are shareholders of the Federated Kaufmann Fund ("Kaufmann Fund"), a mutual fund managed by Defendant Federated Investors, Inc., and its subsidiaries ("Federated" or "Defendants").  Plaintiffs have sued Federated pursuant to Section 36(b) of the Investment Company Act ("ICA"), 15 U.S.C. § 80a-35(b), for breaching its fiduciary duty with respect to its receipt of excessive advisory fees from the Kaufmann Fund.[1]

The Kaufmann Fund's advisory fee is astronomical--by far the highest in the country for a domestic equity fund.  As a result, when the net assets of the Kaufmann Fund grew over $8.5 billion between 2001 and 2007, Federated received a windfall of over $559 million in advisory fees. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████

The theoretical check on the adviser's overreaching such as occurred here with respect to advisory fees is that the fee must be approved annually by the board of trustees for the Kaufmann Fund (the "Trustees").[2]  As part of this process, Section 15(c) of the ICA requires an investment adviser of a mutual fund to furnish, and the trustees of the mutual fund to request and evaluate, all information reasonably necessary to evaluate an advisory fee.  15 U.S.C. § 80a-15(c). █

---

[1] Plaintiffs reserve the right to supplement this trial brief after the remaining discovery has been completed in this case.

[2] Plaintiffs incorporate by reference the more detailed recital of the facts in Plaintiffs' Findings of Fact and Narrative Statement filed concurrently herewith.

███████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████

     The evidence in this case overwhelmingly supports the NYAG's conclusions.  Moreover, now that the Supreme Court has specifically ruled on the matter, the days of an adviser being able to ignore its duty to negotiate at arm's-length are over.  *Jones v. Harris Associates L.P.*, 130 S. Ct. 1418, 1429 (2010) ("*Jones*").  Under *Jones*, the Trustees' "process for negotiating and reviewing" the advisory fee is far from robust and is woefully deficient.  ████████████████ ████████████████████████████████████████████████████, and Federated withheld important information from the Trustees and provided them with misleading and distorted information.  Even though both Federated and the Trustees owe a fiduciary duty to the Federated Kaufmann Fund and its shareholders, there was no arm's-length negotiation and, not surprisingly, the resulting advisory fee is not within the range that an arm's-length process would be expected to produce.

2

Under these circumstances, the Trustees' approval of the Kaufmann Fund's advisory fee is entitled to no deference, and this Court must take a "rigorous" look at the amount of fees that were charged to the Kaufmann Fund. *Id.* On that score, the Kaufmann Fund's advisory fee carries none of "'the earmarks of'" and falls well outside, "the range of fees that might result from [an] arm's-length bargain." *Id.* at 1427 (quoting *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939), and citing *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 694 F.2d 923 (2d Cir. 1982)). Under *Jones*, Federated cannot escape liability for charging one of the highest fees in the industry to unwitting shareholders while the Trustees simply rubber-stamped this fee. Morningstar's assignment of an "F" grade for the Kaufmann Fund's fees speaks volumes, and the Court should find in Plaintiffs' favor after trial.

## II. LEGAL FRAMEWORK FOR ANALYZING A CLAIM UNDER SECTION 36(b) OF THE INVESTMENT COMPANY ACT OF 1940

Section 36(b) of the ICA ("Section 36(b)") provides that "the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser." 15 U.S.C. § 80a-35(b).[3]

As this Court explained in its Order denying Defendants' Motion to Dismiss, "In order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment adviser." *In*

---

[3] Section 36(b) was enacted to combat the "potential conflicts of interest" between investment advisers and the mutual funds they manage due to Congress' recognition that the "forces of arm's-length bargaining do not work in the mutual fund industry." *See* Investment Company Act Amendments of 1970, S. Rep. No. 91-184, reprinted in 1970 U.S.C.C.A.N. 4897, 4898, 4901-2, 4912, 1969 WL 4981 (May 21, 1969).

*re Federated Mutual Funds Excessive Fee Litig.*, 04-352, 2009 U.S. Dist. LEXIS 125258, at \*15

(W.D. Pa. Sept. 30, 2009) (internal quotations and citations omitted).  The Court rejected

Defendants' invitation to adopt the Seventh Circuit's holding in *Jones v. Harris Assocs., L.P.*,

527 F.3d 627 (7th Cir. 2008) ("*Jones I*"), which stated that "a fiduciary must make full

disclosure and play no tricks but is not subject to a cap on compensation." *Federated*, 2009 U.S.

Dist. LEXIS 125258, at \*11 ("The approach set out in *Jones [I]* appears to miss the forest for the

trees.").  In declining to follow *Jones I*, this Court acknowledged the relevance of the process

leading up to the fee arrangement but also recognized that the "main focus" of Section 36(b) is

that it "imposes a fiduciary duty on the 'receipt of compensation' for such services and

'payments of a material nature' to such advisers and their affiliates." *Id.* at \*\*11-12 ("This

focusing of the duty on compensation was directly attributable to Congress' concern about

establishing safeguards to counter the conflict of interest in mutual fund fee arrangements that

are inherent in the organization of a typical mutual fund.").

On March 30, 2010, the Supreme Court, consistent with this Court's overall assessment

of *Jones I*, reversed the Seventh Circuit's decision and remanded the case for further

proceedings. *Jones*, 130 S.Ct. 1418 (2010).  In so doing, the Supreme Court: (1) clarified the

meaning of Section 36(b)'s "fiduciary duty"; (2) discussed what, if any,  deference courts should

give to a fund board's decision to approve the advisory fees paid to a mutual fund's investment

adviser; and (3) addressed what factors to consider when adjudicating a claim for excessive fees

under Section 36(b).

A.   **According To The Supreme Court, "Fiduciary Duty" Under Section 36(b) Means There Must Be Both Good Faith In The Negotiation Process And A Fair Outcome, Which Are The Earmarks Of An Arm's-Length Bargain**

The Supreme Court in *Jones* held that the formulation of the concept of fiduciary duty stated in *Pepper*, 308 U.S. 295, "expresses the meaning of the phrase 'fiduciary duty' in § 36(b). . . ." *Jones*, 130 S. Ct. at 1427. The *Pepper* formulation emphasizes that fiduciaries such as Defendants hold their powers "in trust" and states: *"The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." Id.* (quoting *Pepper*, 308 U.S. at 306-07) (citations omitted) (emphasis in original). Thus, *Jones* adopted a fiduciary duty standard that requires both good faith in the negotiation process *and* a fair outcome.

B.   **A Flawed Fee Approval Process Will Result In No Deference To The Board's Decision And Rigorous Scrutiny By The Court**

The Supreme Court held that "a court's evaluation of an investment adviser's fiduciary duty must take into account both procedure and substance." *Jones*, 130 S. Ct. at 1429 (citing 15 U.S.C. § 80a-35(b)(2)). To this end, the Supreme Court held that courts should give appropriate deference to the outcome of the bargaining process "where a board's process for negotiating and reviewing investment-adviser compensation is robust" and the disinterested trustees have considered all of "the relevant factors." *Jones*, 130 S. Ct. at 1429. Notably, the Supreme Court also held that even if the advisory fee was "negotiated by a board in possession of all relevant information," the Court may nonetheless find it excessive based on evidence that the fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been  the product of arm's-length bargaining." *Id.* at 1429-30.

By contrast, the Supreme Court further emphasized that:

> *[W]here the board's process was deficient or the adviser withheld important*
> *information*, the court must take a more rigorous look at the outcome. When an
> investment adviser fails to disclose material information to the board, greater
> scrutiny is justified because the withheld information might have hampered the
> board's ability to function as "an independent check upon the management."

*Id.* at 1430 (emphasis added) (quoting *Burks v. Lasker*, 441 U.S. at 484). Thus, under *Jones*, a

flawed fee approval process in which there are no negotiations *or* a failure to disclose all relevant

information will result in the Court's refusal to accord deference to the board's conclusions and

rigorous scrutiny of the challenged fee.

### C.    Factors To Consider When Evaluating A Section 36(b) Claim Under The *Jones* Standard Of The Arm's Length Bargaining Benchmark

The Supreme Court held that the *Gartenberg* approach "fully incorporates this

understanding of the fiduciary duty as set out in *Pepper*." *Jones*, 130 S. Ct. at 1430. First, the

Supreme Court explained that *Gartenberg* requires that "all relevant circumstances be taken into

account." *Id.* at 1430. The Supreme Court acknowledged that, under *Gartenberg*, these

"relevant circumstances" include:  (1) the adviser's costs in providing its services; (2) the extent

to which the adviser realizes economies of scale as the fund grows larger; (3) the nature and

quality of services (other than order-processing) the adviser provides; (4) the profitability of the

fund to the adviser; (5) collateral, "fall-out financial benefits" that accrue to the adviser because

of its relationship with the fund; (6) comparative fee structures[4]; and (7) the independence,

expertise, care, and conscientiousness of the board in evaluating adviser compensation. *See*

---

[4] The Supreme Court expressly clarified that fee comparisons to separately managed accounts—
typically where a fund's investment adviser provides the same advisory services to individual
clients—may indeed be considered. *See Jones*, 130 S. Ct. at 1428-29.

*Jones*, 130 S. Ct. at 1426 n.5 (citing *Gartenberg*, 694 F.2d at 929-32).[5]  The Court explained that

"*Gartenberg* uses the range of fees that might result from arm's-length bargaining as the

benchmark for reviewing challenged fees."  *See Jones*, 130 S. Ct. at 1427.

## III.   DEFENDANTS HAVE BREACHED THEIR FIDUCIARY DUTY UNDER SECTION 36(b) BY CHARGING EXCESSIVE ADVISORY FEES TO THE KAUFMANN FUND

The evidence will demonstrate that Defendants violated, and are still violating, Section

36(b) by charging exorbitant fees for providing advisory services to the Kaufmann Fund.

Moreover, the purportedly "independent" Trustees, charged with "negotiating and reviewing"

fees on behalf of the Fund (*Jones*, 130 S. Ct. at 1429), have neglected their duties by approving,

█████████████████████████ every contract they have been asked to consider.  The evidence

will show that the advisory fee of the Kaufmann Fund had been set many years prior (around

1986) by the Edgemont management company.  Edgemont was co-owned by Lawrence Auriana

and Hans Utsch, who served as the portfolio managers of the Kaufmann Fund from 1986 to

Federated's acquisition of Edgemont in April 2001 (and continue to manage the Kaufmann Fund

today, pursuant to employment agreements with Federated).  The advisory fee set by Edgemont

in 1986 remained the same throughout the time that the Kaufmann Fund was managed by

Edgemont and throughout the time that Federated has managed the fund after acquiring

Edgemont in 2001, notwithstanding that the fund has grown from about $3 million in 1986 to in

---

[5] The contract approval process for the Federated Funds presents a unique situation because, in addition to considering the *Gartenberg* factors as part of the Trustees' fee evaluation, the Assurance of Discontinuance (the "AOD") between Federated and the NYAG requires the Trustees to also consider additional factors such as management fees charged to institutional and other Federated clients for like services and the cost to the adviser of supplying services per the funds' advisory agreements.  *See* Plaintiffs' Proposed Findings of Fact at ¶¶295-314 (filed concurrently herewith).

excess of $10 *billion* just a few years ago.[6]  In total, Federated's breaches of fiduciary duty have

cost the Kaufmann Fund hundreds of millions of dollars.  Accordingly, Federated should disgorge

either its entire fee or at least its profits and ill-gotten gains and return such undeserved fees to

the Fund.

A.    **The Trustees' Process For Approval Of The Kaufmann Fund's Advisory Fee Was Not Robust And Is Therefore Entitled To No Deference By The Court**

The Court in *Jones* repeatedly underscored the importance of *negotiation* and *scrutiny* of

the adviser's compensation. *See Jones*, 130 S. Ct. at 1423 (explaining that the board must

"negotiate and scrutinize adviser compensation" (citing *Burks*, 441 U.S. at 482)); *Jones, 130 S.

Ct.* at 1427 ("[S]crutiny of investment adviser compensation by a fully informed mutual fund

board is the 'cornerstone of the . . . effort to control conflicts of interest within mutual funds.'"

(quoting *Burks*, 441 U.S. at 482)); *Jones*, 130 S. Ct. at 1429 (referring to the "negotiating and

reviewing" process and explaining when a fee may be excessive "even if it was negotiated").

In this case, as an evaluation of the relevant factors will demonstrate, the "process for

negotiating and reviewing" the Kaufmann Fund's advisory fee was not robust, and in fact was

woefully deficient and practically nonexistent. *Id.*  The Trustees' process for negotiating and

approving the advisory fee was deficient in many respects.  One deficiency is the fact that,

notwithstanding their duty to negotiate and scrutinize the adviser's compensation, the Trustees

have ███████ consented to renewing the advisory fee contract ever since the Kaufmann Fund's

---

[6] The evidence will demonstrate that the Proxy Statement sent to the shareholders of the Kaufmann Fund, Inc. ("Old Kaufmann") in 2001, seeking approval of the merger/reorganization with Federated, did not disclose to those shareholders that the majority of Federated's other equity funds were charged advisory fees of 0.75% of assets per annum. Nor did it permit these shareholders to vote specifically on the Investment Advisory Contract, which was not even included as an exhibit, or on the 1.425% advisory fee being proposed. Instead, these shareholders were limited to voting only for or against the entire transaction.

inception. Further, this fee has never been directly voted upon by the Kaufmann Fund

shareholders. *See generally* ICA § 15(a), 15 U.S.C. § 80a-15(a) ("It shall be unlawful for any

person to serve or act as investment adviser of a registered investment company, except pursuant

to a written contract, which . . . has been approved by the vote of a majority of the outstanding

voting securities of such registered investment company, and precisely describes all

compensation to be paid thereunder . . . ." (enumeration omitted)).

▮▮▮▮ leads to the inescapable conclusion that the Board process was anything but "robust," and this failure is the death knell for any hopes for deference to the Trustees under *Jones*.[7]

Another deficiency in the fee approval process for negotiating and reviewing the Kaufmann Fund's advisory fee is the Trustees' complete disregard of several of the factors that *Gartenberg* and the AOD mandate they consider while focusing solely on the Kaufmann Fund's performance as a justification for the exorbitant fee. The Trustees' failures with respect to each of the factors are described below:

### 1.   Comparative Fee Structures

Pursuant to *Jones*, a court should give comparisons between advisory fees charged to an adviser's mutual funds and advisory fees charged to its institutional clients "the weight that they merit in light of the similarities and differences between the services." 130 S. Ct. at 1428-29.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



2.    **The Adviser's Costs In Providing Services And The Profitability Of The Fund To The Adviser**





### 3.    Economies Of Scale

An economy of scale is a reduction in the cost per unit of production resulting from increased production. This creates an increasing profit margin as production increases. In the case of investment management, the unit is the management of incremental dollars that are invested, and the cost of providing advisory services is highly fixed in nature. Expert testimony will show that mutual funds would not exist without economies of scale as economies of scale must exist in order for mutual fund advisers to achieve positive operating margins.

Moreover, the existence of economies of scale in providing advisory services has been recognized by both industry and government sources. The Investment Company Institute (ICI), the trade organization funded by fund advisers, has found evidence of economies of scale for individual equity funds in two studies, and McKinsey & Company, a major management consulting firm, identified and quantified economies-of-scale benefits in the mutual fund industry. The Securities and Exchange Commission (SEC) has recognized the role of economies of scale in the mutual fund industry for decades, discussing them in reports in 1966, 1992, and 2000.

Here, the evidence will show that economies of scale with respect to the Kaufmann Fund are empirically demonstrable and quantifiable. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



### 4.    Nature And Quality Of The Adviser's Services

The evidence will show that the Trustees focus all of their attention on the Kaufmann Fund's performance as their primary justification for the Kaufmann Fund being charged an advisory fee that is nearly double that of any other equity fund in the Federated fund complex and nearly triple that of comparable equity funds.  Yet, at the same time, the evidence will show that the Trustees ignored the abysmal ratings regarding the quality of services encompassed

14

within Morningstar's Stewardship grade of "F."[8]  This sole focus on performance is yet more

evidence that the fee approval process is deficient and is not supported by the facts, and that the

Trustees are nothing more than ███████████████████████████████

First, the Trustees were well aware that at the time of the Edgemont acquisition, Old

Kaufmann had experienced several years of marginal returns.  Nonetheless, in October 2000, the

Trustees agreed to an advisory fee that was a clear outlier in the industry and was higher than any

other advisory fee charged by Federated to any of its other mutual funds, all of which were much

smaller in size than the Kaufmann Fund at the time.  ████████████████████████

████████████████████████████████████████████████████

█████████████  However, in an ex post facto rationalization for the Kaufmann Fund's excessive

advisory fee, the Trustees now claim that the fee is justified by the Fund's performance and have

kept the advisory fee unchanged since the time of the acquisition.

---

[8] Morningstar assigns Stewardship Grades to each fund from A (best) to F (Worst).  An overall
Stewardship Grade is assigned based upon the grades the fund receives in each of five categories
– Regulatory History, Board Quality, Manager Incentives, Fees, and Corporate Culture.  A
fund's Stewardship Grade is completely unrelated to its Morningstar Rating (commonly known
as the star rating).  As of September 30, 2007, the Federated Kaufmann Fund scored particularly
poorly: its overall Stewardship Grade was F, with a grade of C on Board Quality and F on Fees.
*See* Consolidated Amended Complaint at ¶¶112-113 (Dkt. No. 121, June 11, 2008).  Although as
of March 18, 2010 Morningstar changed the Kaufmann Fund's overall Stewardship Grade to a C
and Board Quality to a B, Morningstar still assigns the Kaufmann Fund an F on Fees.  Moreover,
many of Morningstar's concerns regarding the Board Quality have remained. *See* Morningstar
Stewardship Grade, Federated Kaufmann Fund (March 18, 2010) *available at*
http://quicktake.morningstar.com/FundNet /FidGrade.aspx?Symbol=KAUFX&Country=USA.
In addition, in its December 11, 2009 analyst report, Morningstar stated that there is "nothing
apparently special about [the Kaufmann Fund's] strategy that requires more expense than its
peers and its nearly $7 billion asset base should create enough economies of scale to pass on to
investors. Adding insult to injury is that one of the fund's veteran managers, Hans Utsch, owns
none of the fund himself." Morningstar Analyst Report, Federated Kaufmann Fund (December
11, 2009) *available at* http://analysis.morningstar.com/ AnalystReport/far.aspx?symbol
=KAUFX&country = USA&referid=A3225.

The Trustees' performance justification for the Kaufmann Fund's high fee is not supported by the record. The Trustees have never recommended that Federated lower advisory fees on any poorly performing fund and ████████████████████████████████ ████████████████████████████████████████ Federated and the Trustees cannot have it both ways. If performance were a factor the Trustees legitimately considered in approving Federated's advisory fees, then there would be a relationship between performance and advisory fees at Federated. As noted above, no such relationship exists. The Trustees cannot ignore poor performance yet use good performance to justify a high fee, especially after the fact.

Even assuming, as the Trustees did, that the Kaufmann Fund had superior performance (as explained below, a faulty assumption at best), their solitary focus on the performance of the Kaufmann Fund has blinded them to Federated's failure to disclose and distortion of other important information they should consider, and Dickstein has remained complicit in Federated's conduct. Not once in the years they have approved the Kaufmann Fund's excessively high advisory fee have the Trustees, or their counsel, requested that Federated provide them with an adequate explanation for the disparity in fees charged to Federated's institutional clients, with credible or reliable cost and profitability information, or with any analysis of economies of scale. Importantly, the Trustees have never once even suggested that Federated lower the Kaufmann Fund's advisory fee or institute breakpoints.

Based on the foregoing, it is clear that the advisory fee approval process was not "robust" -- and instead was grossly deficient -- and thus this Court should afford no deference to the Trustees' decision to approve the Kaufmann Fund's advisory fee. Rigorous scrutiny of this process reveals that the outcome--the Kaufmann Fund's exorbitantly high advisory fee--in no

way took "all of the relevant circumstances" into account and was plainly not "within the range

of fees that might result from arm's-length bargaining." *See Jones*, 130 S. Ct. at 1427. Thus,

Defendants charged the Kaufmann Fund with an excessive advisory fee that violates its fiduciary

duties under Section 36(b).

> **B.     Regardless Of Whether The Advisory Fee Approval Process Was
> Robust Or Not, Defendants Violated Their Fiduciary Duties Under
> Section 36(b)**

As described above, because the advisory fee approval process was woefully deficient in

this case, the Trustees' decision to approve the fee deserves no deference and rigorous scrutiny

of the fee reveals that the advisory fee charged to the Kaufmann Fund was not what would have

been negotiated in an arm's length bargain. Yet even if this Court finds that the advisory fee was

"negotiated by a board in possession of all relevant information"--which it clearly was not--the

Supreme Court has held that a fee may nonetheless be deemed excessive based on evidence that

the fee "is so disproportionately large that it bears no reasonable relationship to the services

rendered and could not have been the product of arm's-length bargaining." *Jones*, 130.Ct. at

1429-30. Federated's misrepresentation of, and failures to disclose, material information to the

Trustees, as described above, coupled with extremely high fees, enormous profitability,

economies of scale that have not been shared with the Trustees and performance that is nowhere

near what Federated claims it to be lead to the inescapable conclusion that Federated has

breached its fiduciary duty to the Kaufmann Fund because its advisory fee is so

disproportionately large.

1.   **The Federated Kaufmann Fund Pays Significantly Higher Advisory Fees Than Federated's Institutional Accounts And Other Equity Funds Within And Outside Of The Federated Family**

The evidence will demonstrate how poorly the Kaufmann Fund's advisory fee compares to other advisory fees, both within and outside of the Federated complex. First, as described above, ███████████████████████████████████████████████████ - a factor specifically recognized by the Supreme Court in *Jones* as significant. 130 S. Ct. at 1428-29. Second, the gross and net advisory fee paid by the Kaufmann Fund are in the 99th percentile of fees charged by all domestic equity mutual funds and the advisory fee is by far the highest among all mid-cap growth funds with at least $1 billion in assets. Third, when Federated began providing advisory services to the Kaufmann Fund in 2001, the advisory fee paid by the Kaufmann Fund was higher, and remains higher, than any other mutual fund managed by Federated even though the Kaufmann Fund was, and remains, the largest fund managed by Federated. Specifically, the Kaufmann Fund's advisory fee rate is significantly higher than the other funds comprising Federated Equity Funds, except for other series bearing the Kaufmann name. From 2001 to 2008, almost all of the funds comprising Federated Equity Funds, all of which are much smaller than the Kaufmann Fund, had an advisory fee of 0.75%. In addition, the Federated Mid-Cap Growth Strategies Fund, which is managed by the growth team against the same index for its benchmark as the Kaufmann Fund, also has a stated advisory fee of 0.75%.

Finally, the Kaufmann Fund II, a clone of the Kaufmann Fund that is distributed by insurance companies as a funding vehicle for insurance products, has the same stated advisory fee of 1.425% but enjoys a larger fee waiver than the Kaufmann Fund ████████████████ ████████████████████████████████████████████████████████████████████████████

**2.     Federated Has Earned Enormous Profits From Managing The
         Federated Kaufmann Fund**

**3.     Federated Has Not Passed On The Benefits Accruing From
         The Economies Of Scale Realized As The Federated Kaufmann
         Fund Has Grown Substantially Over The Past Decade**

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████

As explained above, expert testimony will demonstrate that mutual funds would not exist

without economies of scale and the existence of economies of scale is widely recognized.  ████

███████████████████████████████████████████

████████████████████████████████████████████

███████ Federated has utterly failed to pass along any of the benefits of economies of scale to

the Kaufmann Fund through breakpoints to the advisory fee--a striking contrast with the

prevailing practice in the mutual fund industry.  The Kaufmann Fund's extremely high advisory

fee and the lack of breakpoints preclude the Kaufmann Fund from sharing in any economies of

scale generated by its large size.

        **4.**      **The Nature And Quality Of The Services Provided By The Fund's Investment Advisers Do Not Justify The High Fees Paid By The Fund**

Federated touts the performance of the Kaufmann Fund and uses it to rationalize its

extraordinarily high advisory fee.  However, this is simply an ex post facto illusory justification.

First, as noted above, at the time of the Edgemont acquisition, Old Kaufmann had experienced

several years of marginal returns.  ██████████████████████████

████████████████████████████████████████ a report by

Morningstar that characterized Old Kaufmann as a "has been" and described its returns as

"disappointing by any measure."  In this context, the Trustees approved the 1.425% gross

advisory fee for the Kaufmann Fund (reduced to 1.275% by a voluntary fee waiver) and those

fees have remained the same ever since. Federated cannot now claim that the fees are high because of the performance.

Second, as Plaintiffs' expert Dr. Steve Pomerantz will demonstrate, there is absolutely no relationship between fee rates and returns of the mutual funds managed by Federated. Funds with relatively good performance have both high and low fees, and vice-versa. If the Kaufmann Fund's fees were high because of supposedly good performance, one would expect to see funds with poor performance having lower fees. This relationship simply does not exist.

██████████████████████████████████████████████████████

████████████████████████████████ If Federated wanted legitimately to use performance as a criterion for setting its fees, it could propose performance-based fees for the Kaufmann Fund, ████████████████ Neither Federated nor the Trustees have offered any other credible justification besides performance for the Kaufmann Fund's exorbitant advisory fee -- and none exists.

In fact, Plaintiffs' experts will demonstrate that the Kaufmann Fund's performance cannot justify its excessive fee. When measured against appropriate benchmarks, rather than Federated's self-selected benchmark, the Fund's performance is unexceptional. First, as noted above, Old Kaufmann had large returns when it was relatively small in size. As the fund grew, its returns could not keep pace. ██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

Second, Federated's self-selected benchmark for the Kaufmann Fund is the Russell Mid-Cap Growth Index. But this index is not indicative of the Kaufmann Fund's holdings because the Kaufmann Fund invests significant assets in emerging markets, which have performed very well. As Dr. Pomerantz will demonstrate, compared to a blend of index funds that more accurately reflects the Kaufmann Fund's actual holdings, the Fund underperforms. In fact, as Plaintiffs' expert Dr. Ian Ayres will establish, the return of the Kaufmann Fund is statistically related to the returns of an emerging markets index and Federated's description of the Kaufmann Fund as a domestic equity "mid-cap growth" fund is not appropriate.

Third, Plaintiffs' expert Dr. Ian Ayres will demonstrate, using well established statistical models, that the Kaufmann Fund has not exhibited statistically significant positive returns. Moreover, no mutual fund that does exhibit statistically significant positive returns pays an advisory fee as high as the fee the Kaufmann Fund pays Federated. In fact, the average advisory fee paid by these funds is approximately half the amount paid by the Kaufmann Fund.

IV.    **THE SUPREME COURT HELD IN *JONES* THAT THE ISSUE OF COMPETITION IN THE MUTUAL FUND INDUSTRY SHOULD BE LEFT FOR CONGRESS TO RESOLVE**

Defendants' expert, Christopher James, raised the issue of "competition in the mutual fund industry" in his expert report. The Supreme Court's decision in *Jones*, however, was unequivocal in stating that that issue is for Congress, not the Courts: "The debate between the Seventh Circuit panel and the dissent from the denial of rehearing regarding today's mutual fund market is a matter for Congress, not the courts." *Jones*, 130 S.Ct. at 1430-31. Plaintiffs presume that Defendants will therefore withdraw Mr. James' opinion on that topic and not seek to introduce "competition in the mutual fund industry" as a topic at trial. If Defendants do not withdraw that portion of Mr. James' expert report, Plaintiffs will formally move to exclude it and

reserve the right to offer Dr. Ian Ayres' rebuttal opinions (along with corresponding facts) to Mr. James as set forth in Dr. Ayres' expert witness report.

## V.    REMEDIES FOR DEFENDANTS' BREACHES OF FIDUCIARY DUTY

Federated violated its fiduciary duty to the Kaufmann Fund under Section 36(b) by charging an excessive advisory fee. Section 36(b)(3) provides that the remedy for this breach of fiduciary duty is the disgorgement of ill-gotten gains up to "the amount of compensation or payments received." 15 U.S.C. § 80a-35(b)(3).[9] Plaintiffs' Consolidated Amended Complaint also seeks an order rescinding the fee provisions of the Investment Advisory Agreement between Federated and the Kaufmann Fund. Section 47(b)(1) of the ICA provides that a contract whose performance involves a violation of the ICA is unenforceable. 15 U.S.C. § 80a-46(b)(1) ("A contract that is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder, is unenforceable . . . ."). Further, the extent that an unenforceable contract is severable, the lawful portion of a contract maybe severed from the unlawful portions. See 15 U.S.C. § 80a-46(b)(3)(A). Here, by charging an excessive fee in violation of its fiduciary duty, Federated has triggered these provisions of Section 47, and this

---

[9] This remedy is consistent with remedies contained in Pennsylvania and federal common law, applicable case law and analogous restatements. See In re Gartenberg, 636 F.2d 16, 17 (2d Cir. 1980) ("Actions seeking disgorgement of profits are an effective and seemly method by which the Commission enforces the securities laws." (citing SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972)); Sack v. Feinman, 413 A.2d 1059, 1065 (1980) ("If the fiduciary makes profits, or gets interest on the money he wrongly takes from the beneficiary, he must be held liable not only for the profits or interest he makes on such funds, but also for interest on those profits or the interest itself."); Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1285 (Pa. 1991) (explaining that courts have frequently ordered disgorgement or forfeiture of fees owed to fiduciaries "who have breached their fiduciary duties to their clients by engaging in impermissible conflicts of interests."); Restatement (First) of Restitution §190 (1937). In addition, Federated's Investment Advisory Contract at paragraph 14 has a Pennsylvania choice of law provision. See Investment Advisory Contract (FEDFEE56020-51) at FEDFEE56022.

Court should, in addition to the award of damages, declare the fee provision of the Investment Advisory Agreement to be unenforceable.

Plaintiffs seek a statutory remedy under Section 36(b) that is equitable in nature, in a proceeding without a jury. Plaintiffs will provide the Court with evidence supporting several alternative possible amounts that are appropriate for disgorgement. A summary of those alternative amounts for the period of June 28, 2003 to June 8, 2009 (described in greater detail in the expert report of James D. Lamb filed concurrently herewith)[10] is as follows:

(1)     Disgorgement of the total fee: $616,788,271; or

(2)     ██████████████████████████████

(3)     Disgorgement of amounts in excess of Federated's standard equity fund fee (.75%): $254,107,126; or

(4)     ███████████████████████████████████████

This Court should fashion the equitable remedy it deems appropriate for its award of damages to Plaintiffs, but this Court should be aware that Plaintiffs are *not* requesting that this Court set a new advisory fee.[11] Defendants have argued (and can be expected to continue to do so) that Plaintiffs are requesting that this Court sit as the rate setter. This is not accurate, as Plaintiffs are well aware of the aversion to imposing fee-setting burdens on the courts. *See*

---

[10] These amounts will be updated at the time of trial.

[11] *See, e.g., In re Dentler Family Trust*, 873 A.2d 738 (Pa. Super. Ct. 2005). In *Dentler*, an attorney acted as an investment adviser to a trust for a fee of 2% as provided in the trust document he drafted. *See id.* at 739, 741. The standard fee for such advisory services was 1%. *See id.* at 741. The court held that the attorney/adviser breached his fiduciary duty by engaging in improper investment activity. *Id.* at 743. The trial court decided to award a disgorgement of the entire 2% fee rather than just the amounts over the 1% standard rate, and the appellate court affirmed. *See id.* at 747 ("[I]t was not an abuse of discretion to direct Richard Doty to reimburse the trust for the entire amount he received as investment advisor." (internal quotations omitted)). In reaching this conclusion, the court weighed equitable considerations, including the finding that the attorney/adviser's conduct was particularly offensive. *See id.*

*generally Jones I*, 527 F.3d at 633 ("Judicial price-setting does not accompany fiduciary duties"). Instead, Plaintiffs seek an adjudication that Defendants have received excessive compensation, and seek an equitable disgorgement, not to exceed the entire fee.  If the Court enters judgment in Plaintiffs' favor, Federated and the Fund's Board can expect properly to negotiate a new and appropriate advisory fee in a manner consistent with *Jones* and the standards articulated therein.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court find that Defendants violated their fiduciary duties with respect to compensation under Section 36(b) and enter judgment in their favor.

Dated:  June 1, 2010

**RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC**

By: /s/ James C. Bradley

James C. Bradley (*Pro Hac Vice*)
Michael Brickman, Esq. (*Pro Hac Vice*)
Nina H. Fields, Esq. (*Pro Hac Vice*)
174 E. Bay St.
Charleston, SC  29401
Phone: 843.727.6500
Fax:    843.881.6183
Email: jbradley@rpwb.com
        mbrickman@rpwb.com
        nfields@rpwb.com

**JOHNSON, POPE, BOKOR, RUPPEL & BURNS LLP**
Guy M. Burns, Esq. (*Pro Hac Vice*)
Jonathan Coleman
403 E. Madison St., Ste. 400
Tampa, FL  33602
Phone: 813.225.2500
Fax:    813.223.7118
Email: guyb@jpfirm.com
        jonathanc@jpfirm.com

**KELLER ROHRBACK, LLP**
Michael D. Woerner, Esq. (*Pro Hac Vice*)
Laura Gerber, Esq. (*Pro Hac Vice*)
1201 Third Ave., Ste. 3200
Seattle WA  98101-3052
Phone: 206.224.7437
Fax:    206.623.3384
Email: mwoerner@kellerrohrback.com
          lgerber@kellerrohrback.com

**STEMBER FEINSTEIN DOYLE**
   **& PAYNE, LLC**
Ellen M. Doyle, Esq. (Pro Hac Vice)
17th Floor Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
Phone: 412.281.8400
Fax:    412.232.3730
Email: edoyle@stemberfeinstein.com

***Attorneys for Plaintiff Nina Monahan***

**MILBERG LLP**
Janine L. Pollack, Esq. (*Pro Hac Vice*)
Anna C. Dover, Esq. (*Pro Hac Vice*)
One Pennsylvania Plaza, 48th Floor
New York, NY 10119
Phone: 212.946.9376
Fax:    212.273.4388
Email: jpollack@milberg.com
          adover@milberg.com

**LAW OFFICE OF ALFRED G. YATES JR., PC**
Alfred G. Yates, Jr. (PA17419)
Gerald L. Rutledge (PA62027)
429 Forbes Avenue
519 Allegheny Building
Pittsburgh, Pennsylvania  15219
Phone: 412.391.5164
Fax:    412.471.1033
Email: yateslaw@aol.com

**BROWER PIVEN, A PROFESSIONAL
CORPORATION**
Charles J. Piven, Esq. (*Pro Hac Vice*)
The World Trade Center - Baltimore
401 East Pratt Street, Suite 2525
Baltimore, MD  21202
Phone: 410.332.0030
Fax:    410.685.1300
Email: piven@browerpiven.com

*Attorneys for Plaintiff Mary Ann Abendroth*

**APPERSON CRUMP PLC**
Charles D. Reaves, Esq. (*Pro Hac Vice*)
Jerome A. Broadhurst, Esq. (*Pro Hac Vice*)
6000 Poplar Ave., Ste. 400
Memphis, TN 38119-3972
Phone: 901.756.6300
Fax:    901.757.1296
Email: creaves@appersoncrump.com
       jbroadhurst@appersoncrump.com

*Attorneys for Plaintiff Gretchen Reaves*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky, Esq. (*Pro Hac Vice*)
W. Scott Holleman, Esq.
39 Broadway, Ste. 1601
New York, NY  10006
Phone: 212.363.7500
Fax:    212.363.7171
Email: ek@zlk.com
       sholleman@zlk.com

**PRIBANIC & PRIBANIC**
Vincent Coppola, Esq.
513 Court Place
Pittsburgh, PA  15219
Phone: 412.281.8844
Fax:    412.281.4740
Email: vcoppola@pribanic.com

**BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO**
Jeffrey C. Block, Esq. (*Pro Hac Vice*)
Leslie R. Stern, Esq. (*Pro Hac Vice*)
One Liberty Square, 8th Fl.
. Boston, MA  02109
Phone: 617.542.8300
Fax:    617.542.1194
Email: jblock@bermanesq.com
         lstern@bermanesq.com

*Attorneys for Plaintiff Lawrence Zucker*

## CERTIFICATE OF SERVICE

The undersigned attorney of record hereby certifies that they caused a true and correct copy of the above and foregoing pleading to be served via email transmission upon:

Thomas L. Allen
Perry A. Napolitano
Joseph E. Culleiton
James L. Rockney
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania 15222
Phone:  412.288.3131
Fax:  412.288.3063
Email:  tallen@reedsmith.com
        pnapolitano@reedsmith.com
        jculleiton@reedsmith.com
        jrockney@reedsmith.com

James N. Benedict
Sean M. Murphy
James G. Cavoli
C. Neil Gray
Will Gross
Milbank, Tweed, Hadley & McCloy, LLP
One Chase Manhattan Plaza
New York, New York 10005-1413
Phone: 212.530.5000
Fax: 212.530.5219
Email: jbenedict@milbank.com
       smurphy@milbank.com
       jcavoli@milbank.com
       cngray@milbank.com
       wgross@milbank.com

**Attorneys for Defendants**


                 /s/ Anna C. Dover
                 Anna C. Dover, Esq.
                 Attorney for Plaintiffs

Dated: June 1, 2010